Don Taylor HARRIS, II, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–99–057–CR.

Court of Appeals of Texas,
Waco.

Oct. 18, 2000.

Rehearing Overruled Nov. 15, 2000.

610 

Joe L. Sheppard, Burleson, for appellant.

Bill Moore, Johnson County Dist. Atty., David W. Vernon, Johnson County Asst. Dist. Atty., Cleburne, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

GRAY, Justice.

After a trial by jury, Don Taylor Harris, II was convicted of two counts of manslaughter, two counts of intoxication manslaughter, and failure to stop and render aid arising out of a traffic accident resulting in the death of a single victim. There was a deadly weapon finding. The jury

assessed punishment as 36 years in prison plus a $10,000 fine for each of the four manslaughter convictions, and 20 years plus a $10,000 fine for failure to stop. He appeals in five issues. The judgment of the trial court is vacated in part, affirmed in part.

## ISSUE 1: DOUBLE JEOPARDY

*Multiple Counts from the same conduct.*

■ In issue one, Harris raises three separate legal arguments. First, he contends the court committed error by allowing him to be convicted of manslaughter and intoxication manslaughter, both arising out of one traffic accident and the death of a single victim. He argues that this is a double jeopardy violation. We agree.

*Ervin* controls the result of this issue. *Ex Parte Ervin v. State,* 991 S.W.2d 804 (Tex.Crim.App.1999). In *Ervin,* the Court of Criminal Appeals examined the intoxication manslaughter and manslaughter statutes under a double jeopardy analysis. Pursuant to a plea agreement, Ervin plead guilty and was convicted of intoxication manslaughter and manslaughter. Both offenses arose out of a traffic accident involving a single victim. Ervin was convicted under both the manslaughter and the intoxication manslaughter statutes and given a sentence for each conviction.

In analyzing the legislative intent of both statutes, the Court noted that as of September 1, 1994, the Texas Legislature moved the intoxication manslaughter portion of the manslaughter statute to a new section of the Penal Code for intoxication offenses. The question before the Court of Criminal Appeals was whether this move made intoxication manslaughter an entirely different offense for double jeopardy purposes. The court answered this question in the negative and held that "manslaughter and intoxication manslaughter are the same offense for double jeopardy purposes when they involve the same victim, and imposing convictions for both in this situation violates the Double

Jeopardy Clause." *Id.* at 316. Thus, Harris's double jeopardy contention that the imposition of convictions for manslaughter and intoxication manslaughter both resulting from the same accident and death of a single victim is meritorious. We must now determine the proper remedy. The State argues it should be allowed to choose which offense to vacate. The State would choose to vacate the "Intoxication Manslaughter" offense. In *Ervin,* the Court of Criminal Appeals expressly held that the State may waive an illegal portion of a judgment and maintain the remainder of a *plea agreement. Ex Parte Ervin,* 991 S.W.2d at 817 *(emphasis added).* The State asks us to expand the court's holding, and hold that the State may also waive an illegal portion of a judgment and maintain the remainder of the judgment, in the absence of a plea agreement. *See Burke v. State,* 6 S.W.3d 312 (Tex.App.—Fort Worth 1999), vacated and remanded by, 28 S.W.3d 545 (Tex.Crim.App.2000). However, we decline the State's invitation to make this expansion.

■ In *Ex parte Pena,* the Court of Criminal Appeals adopted the "most serious offense" test to determine which offense to dismiss where there was a misjoinder of more than one offense in an indictment. *Ex parte Pena,* 820 S.W.2d 806, 809 (Tex.Crim.App.1991); *see Flores v. State,* 30 S.W.3d 29 (Tex.App.—San Antonio, 2000). The "most serious offense" is determined by the degree of the felony, the range of punishment and the sentence imposed, with the rules of parole eligibility and good conduct time as a tie-breaker. *Ex parte Pena,* 820 S.W.2d at 809. The most serious offense is to be imposed and the lesser offense is to be vacated. *Id.*

■ The Court of Criminal Appeals, in *Landers,* adopted the "most serious punishment" test to determine which offense to dismiss when there was a double jeopardy violation because the defendant was convicted of both a greater and lesser in-

cluded offense. *Landers v. State*, 957 S.W.2d 558, 559–60 (Tex.Crim.App.1997). The "most serious punishment" test instructs the appellate court to uphold the offense for which the jury imposed the higher sentence.

Here, the State charged Harris with manslaughter in count one of the indictment, which is a felony of the second degree. TEX.PENAL CODE ANN. § 19.04. Harris pled true to the enhancement paragraph; thus, manslaughter was elevated to a first degree felony offense. As a first degree felony, he was subject to a penalty of confinement in prison for life or for any term of not more than 99 years or less than 15 years and a $10,000 fine. TEX.PENAL CODE ANN. § 12.42(c). Harris was sentenced to 36 years in prison for this offense. In count two, Harris was charged with intoxication manslaughter, a second degree felony that was also elevated to a first degree felony due to the plea of true to the enhancement paragraph. TEX.PENAL CODE ANN. 49.08.

Therefore, Harris was subject to the same sentencing possibilities as his conviction for manslaughter and he was given the same punishment—36 years and a $10,000 fine. Additionally, the jury found and a deadly weapon finding was included in the judgement for both counts. However, under the Transportation Code, a person convicted of intoxication manslaughter will also automatically have their driver's license suspended for not less than 180 days or more than two years. *See* TEX. TRANSP.CODE ANN. §§ 521.341, 521.344 (Vernon 1999). A license is not automatically suspended for manslaughter.

█ This is not a misjoinder case so *Pena's* "most serious offense" test is not directly applicable. This is not a lesser included offense case so *Landers'* "most serious punishment" test is not directly applicable. However, today we need not resolve which test should be applied on these facts because under the application of either the "most serious offense" or the

"most serious punishment" test it is the intoxication manslaughter conviction that is retained and the involuntary manslaughter conviction that is vacated.

*Multiple paragraphs in the same count.*

█ Second, Harris contends that it was error for the State to obtain multiple convictions for Intoxication Manslaughter based on separate paragraphs in the indictment alleging different methods (manner and means) by which he committed the offense. We agree. He was found guilty of Intoxication Manslaughter as alleged in Count Two, paragraphs one and two of the indictment. A "count" is used to charge an offense and a "paragraph" is a portion or subset of a count charging a method of committing that offense. *Watkins v. State*, 946 S.W.2d 594, 601 (Tex.App.—Fort Worth 1997, pet. ref'd). The State may utilize as many paragraphs as are necessary to allege the various manner and means of committing the one alleged offense. *Callins v. State*, 726 S.W.2d 555 (Tex.Crim.App.1986), *on rehearing*, 780 S.W.2d 176 (Tex.Crim.App.1989). When the indictment charges only one offense, but multiple methods of committing that offense, however, the defendant may be convicted only of the one offense. *See Romine v. State*, 722 S.W.2d 494, 501 (Tex. App.—Houston [14th Dist.] 1986), pet. ref'd, 747 S.W.2d 382 (Tex.Crim.App.1988). Thus, in this case, the offense of intoxication manslaughter may be committed by a variety of different means, but so long as they are part of the same incident, Harris can be convicted of only one count of intoxication manslaughter. *See Watkins*, 946 S.W.2d at 601. Accordingly, Harris's claim that it was error to convict him twice for two different methods of committing the same offense—intoxication manslaughter—is meritorious.

█ Again we need not decide whether to apply the *Pena* or *Landers* test to determine which of the involuntary manslaughter manner and means to vacate.

The application of either test does not resolve the question because the two convictions are necessarily of the same level of offense and the jury assessed the same punishment. Thus we will resort to the former law and will utilize the rule adopted in *Holcomb*—that we uphold the conviction listed first in the trial court's judgment. *Holcomb v. State,* 745 S.W.2d 903 (Tex. Crim.App.1988). *Holcomb* was the rule prior to *Pena* and *Landers* and we believe it provides a predictable and consistent method of resolving the issue if the application of those two tests fail to indicate which conviction to vacate.

The judgment in the instant case lists the conviction for intoxication manslaughter by running a red light first and intoxication manslaughter by speeding second. Intoxication manslaughter by running a red light was also alleged first in the indictment. Thus, applying the rule in *Holcomb,* the conviction for intoxication manslaughter by speeding is vacated and the conviction for intoxication manslaughter by running a red light is upheld.

*One Indictment—Multiple Offenses & Multiple Convictions.*

■ Third, Harris argues that it was error for the State to obtain multiple convictions for non-property offenses alleged in two or more counts of the same indictment. We disagree. "Two or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same *criminal episode,* as defined in Chapter 3 of the Penal Code." TEX.CODE CRIM.PROC.ANN. art. 21.24(a) (Vernon Supp.2000) (*emphasis added* ). Section 3.01 of the Penal Code defines *criminal episode* as follows:

The commission of two or more offenses, *regardless of whether the harm is directed toward or inflicted upon more than one person or item of property,* under the following circumstance:

(1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or

(2) the offenses are the repeated commission of the same or similar offenses.

TEX.PENAL CODE ANN. § 3.01 (Vernon 1994 & Supp.1998) (*emphasis added* ). Thus, reading the current versions of article 21.24(a) of the Code of Criminal Procedure and section 3.01 of the Penal Code together, the State is authorized to join two or more offenses in a single indictment if the offenses are part of the same transaction or if the offenses are part of a common scheme or plan. *Thacker v. State,* 999 S.W.2d 56, 62 (Tex.App.—Houston [14th Dist.] 1999, pet. ref'd).

Harris relies upon *Drake,* where the Court held that the State lacked authority to obtain multiple convictions from a single indictment and any conviction in excess of one per indictment is void. *Ex parte Drake,* 883 S.W.2d 213, 214 (Tex.Crim. App.1994). However, the *Drake* case involved the prior version of section 3 .01 of the Texas Penal Code, which defined "criminal episode" as "the repeated commission of one offense defined in Title 7 of this Code (Offenses Against Property)." TEX.PENAL CODE ANN. § 3.01 (Vernon 1974), amended by Act of June 17, 1987, 70th Leg., R.S., ch. 387, § 1, 1987 Tex.Gen. Laws 1900, 1900 (current version at TEX.PENAL CODE ANN. § 3.01 (Vernon 1994)). Therefore, because the offense at issue in *Drake* was committed before the statutory change of section 3.01, only offenses against property were susceptible to being joined in one indictment. Thus, the statutory underpinnings of *Drake* have been amended and it is currently permissible for the State to allege multiple non-property offenses in the same indictment and obtain convictions on each offense. *See Sanchez v. State,* 928 S.W.2d 255 (Tex. App.—Houston [14th Dist.] 1996, no pet.). Accordingly, Harris's reliance upon *Drake* is misplaced.

■ This Court has the power to modify and correct a judgment as the law and

nature of the case may require. TEX. R.APP.P. 43.2, 43.6. Thus, because one intoxication manslaughter conviction and both manslaughter convictions are vacated, we will reform the judgment of the trial court to show a conviction for intoxication manslaughter by running a red light with a deadly weapon finding and a conviction for failure to stop and render aid. This cause need not be remanded to the trial court for a reassessment of punishment because the trial judge assessed a separate sentence for each offense. Harris's first issue is sustained in part.

## ISSUE 2: FACTUAL SUFFICIENCY

 In issue two, Harris asserts that there was insufficient evidence to convict him of intoxication manslaughter under section 49.08. TEX.PENAL CODE ANN. § 49.08 (Vernon 1994 & Supp.2000). Specifically, he attacks the factual sufficiency of the evidence establishing the element of intoxication. Section 49.08 provides in part:

(a) A person commits an offense if the person:

(1) operates a motor vehicle in a public place, an aircraft, or a watercraft; and

(2) is *intoxicated*[1] and by reason of that intoxication causes the death of another by accident or mistake.

*Id.*

 If a party is attacking the factual sufficiency of an adverse finding on an issue to which they did not have the burden of proof, they must demonstrate that there is insufficient evidence to support the adverse finding. *Johnson v. State*, 23 S.W.3d 1, 10 (Tex.Crim.App.2000).

The complete and correct standard a reviewing court must follow to conduct a *Clewis*[2] factual sufficiency review of the

elements of a criminal offense *asks whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof....*

*Id.* at 18. Having done so, the court should set aside the verdict only if the evidence standing alone is "so weak" as to be clearly wrong and manifestly unjust. *Johnson*, 23 S.W.3d at 10. The jury is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991).

## THE EVIDENCE

The evidence shows that Harris consumed alcohol with his friends the afternoon and evening on the day of the accident. In his statement to the police, however, he only admitted to drinking a small amount earlier that afternoon. There was testimony presented at trial that Harris was seen drinking approximately three-fourths of a large bottle of brandy. And there was testimony that Harris bragged about drinking half a bottle of Christian Brothers brandy.

Earlier that evening, Harris drove from Fort Worth to Cleburne with some friends. A passenger in the car testified that during this trip Harris drove erratically—speeding and weaving in and out of traffic. She also testified that Harris was asked to let someone else drive because it was feared that he already had "too much to drink." Another witness testified that Harris smelled of alcohol and was drinking an unknown alcoholic beverage while at her house later that evening just hours

---

1. "Intoxicated" means: (A) Not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body;

or (B) having an alcohol concentration of 0.10 or more. TEX.PENAL CODE § 49.01(2).

2. *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim. App.1996).

before the fatal incident. Later that night, Harris decided to take his friend back to Fort Worth and agreed to give another acquaintance a ride across town. The acquaintance testified that while he was in the car, Harris swerved in and out of traffic, ran a red light, and sped 60–65 m.p.h. down residential streets. Furthermore, the acquaintance testified that when he informed Harris that he had passed the house, Harris pulled the emergency break and did a 360–degree turn in the middle of the street. Also, Harris's friend, who was in the car with him at the time of the accident, testified that against his protests, Harris had sped up to try and beat the victim's vehicle through the intersection, running the red light and causing the collision.

Additionally, Harris fled the scene of the accident. *See Harris v. State,* 645 S.W.2d 447, 457 (Tex.Crim.App.1983) (holding that flight from the scene of a crime is circumstantial evidence of guilt). One of the police officers dispatched to help find Harris, testified that when he questioned Harris's mother about his whereabouts, she mentioned that her son had been drinking.

Harris points out, and the State concurs, that there was no scientific or medical evidence presented at trial establishing that he was intoxicated. Nevertheless, an examination of the record reveals that there was enough evidence for the jury to conclude that Harris was intoxicated at the time of the accident notwithstanding that there was controverting evidence as to exactly where and when Harris began drinking on June 29, 1998, how much he drank, and how affected he was by the alcohol. Based upon the evidence, we hold that the evidence was factually sufficient to support the jury's verdict on the issue of intoxication. Accordingly, issue two is overruled.

### ISSUE 3: IMPROPER VOIR DIRE

■ Harris contends in issue three that the prosecution committed reversible error during voir dire by making a statement that amounted to a comment on Harris's failure to take the stand. However, Harris did not object to the alleged improper statement, and thus, he did not preserve his complaint for our review. *See* TEX.R.APP.P. 33.1(a). Accordingly, Harris' third issue is overruled.

### ISSUE 4: MOTION TO QUASH JURY ARRAY

■ In issue four, Harris argues that the trial court erred in not granting his motion to quash the jury array because of systematic exclusion of African Americans from the jury panel. Article 35.07 provides that a party may challenge an array only on the ground that the officer summoning the jury has wilfully summoned jurors with a view to securing a conviction or acquittal. TEX.CODE CRIM.PROC.ANN. art. 35.07 (Vernon Supp.2000); *Broussard v. State,* 910 S.W.2d 952, 957 (Tex.Crim.App. 1995); *Cooks v. State,* 844 S.W.2d 697 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

> As set out in *Duren,* in order to establish a prima facie violation of the requirement that there be a fair cross section of the community represented, appellant must show: 1) that the group alleged to be excluded is a "distinctive" group in the community; 2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and 3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process.

*Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Pondexter v. State,* 942 S.W.2d 577 (Tex.Crim.App. 1996).

In the present case, Harris met the first prong of *Duren* because the group allegedly excluded is distinctive—African-Americans. But Harris did not meet his burden for the second prong by making a showing of unfairness and unreasonableness. He failed to show there was an unfair and

unreasonable difference between the percentage of African–Americans in the county and the percentage on the jury panel. In fact, Harris failed to produce evidence of the percentage of African–American residents in Johnson County. The record reveals that venire members were chosen randomly by computer from a designated database. Harris has brought forth no evidence that eligible African–Americans were excluded from the database.

Furthermore, he failed to meet his burden for the third prong by showing "systematic exclusion." Systematic exclusion can be shown when the defendant produces evidence that the person responsible for summoning the complained-of venire panel has willfully summoned jurors with a view of securing a conviction or acquittal. *Broussard*, 910 S.W.2d at 957; TEX.CODE CRIM.PROC.ANN. art. 35.07 (Vernon Supp.2000). "Disproportionate representation in a single panel does not demonstrate systematic exclusion of distinctive groups in violation of appellant's rights under the Sixth Amendment." *Pondexter*, 942 S.W.2d at 580. Harris brought forth information relating only to the venire in this case. Thus, Harris failed to offer any evidence that the selection process in Johnson county operated in any way to systematically exclude African–Americans from the panel. Accordingly, issue four is overruled.

## ISSUE 5: INEFFECTIVE ASSISTANCE OF COUNSEL

In issue five, Harris contends that fundamental error was committed when Harris was denied effective assistance of counsel. Harris argues that his trial counsel was ineffective for the following three reasons: (1) failure to challenge the voluntariness of a statement given by Harris to a Burleson police officer; (2) electing to have the jury decide punishment instead of the trial judge; and (3) not having Harris take the stand and testify during punishment. We disagree.

Texas courts must adhere to the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel. *Thompson v. State*, 9 S.W.3d 808 (Tex.Crim.App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). A defendant must show that: (1) counsel's performance was deficient to the extent that counsel failed to function as the "counsel" guaranteed by the Sixth Amendment and (2) that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Walker v. State*, 4 S.W.3d 98 (Tex.App.—Waco 1999, pet. ref'd).

This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a reliable result. *McFarland v. State*, 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). In other words, the appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Thompson*, 9 S.W.3d at 812.

First, Harris contends that defense counsel was ineffective for not challenging the voluntariness of Harris's statement at trial or in a suppression hearing. The Code of Criminal Procedure requires that "[i]n all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions." TEX. CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon Supp.2000). If there is any evidence raised as to the voluntariness of a defendant's confession, whether or not counsel specifically requests a hearing, the trial court has a duty to hold a hearing on the

issue. *McNeill v. State*, 650 S.W.2d 405, 407 (Tex.Crim.App.1983). In this case, the trial court held the required hearing outside the presence of the jury to determine the voluntariness of Harris's written statement:

> Defense Counsel: Judge, on 7/4/98 the detective that is now testifying took a statement from Don Harris, II, concerning this accident. And to some degree the events that happened a little bit prior and during the accident. Mr. Harris understands he has a right to object to the confession and the introduction of that confession on numerous legal grounds, which we've been over. That as part of our trial strategy and talking to Mr. Harris and explaining to them he could have a Jackson Denno hearing as to the voluntariness of the confession, that it is our desire to not do so. And, Don, do you understand we've talked about this?

> Defendant: Yeah.

> Defense Counsel: We've talked about it at length we could have a separate hearing outside the presence of the jury and ask Judge Bridewell to find whether this confession was voluntarily given?

> Defendant: Right

> Defense Counsel: You've told me you don't wish to do that?

> Defendant: Right.

> Defense Counsel: Do you have any questions of me or the Judge or anybody concerning this statement as written although it was written out by Detective Crum?

> Defendant: Right.

> Defense Counsel: If the court allows it there is a possibility, probably will be shown to the jury?

> Defendant: Yes.

> \* \* \*

> The Court: According on Article 38.22, Section 6 of the Code of Criminal Procedure, I just want to ask at this time is there any question that's being raised as to the voluntariness of the statement of the accused in this case?

> Defense Counsel: No, he voluntarily gave it.

> The Court: Mr. Harris, I'll ask you at this time on this statement that you made, was that freely and voluntarily made?

> Defendant: Correct.

> The Court: Is there anything else?

> Defense Counsel: I know this is unusual, Judge, and I appreciate the Court's protection. But for the record, this statement is part of our trial strategy in not having a war with the Court and again with the jury on the voluntariness of this statement.

> \* \* \*

■ That a trial strategy does not work does not mean that trial counsel was ineffective. *State v. Balderas*, 915 S.W.2d 913, 919 (Tex.App.—Hous. [1 Dist.] 1996). Trial counsel must be allowed to take calculated risks in defending clients. *Tompkins v. State*, 869 S.W.2d 637, 642 (Tex. App.—Eastland), *pet. dism'd, improvidently granted*, 888 S.W.2d 825 (Tex.Crim. App.1994). In the present case, the defense attorney's failure to challenge the voluntariness of Harris's statement may have been a tactical decision based on his perception that the statement was voluntary. Thus, we are not convinced on this record that counsel's failure to do so rose to the level of ineffective assistance. Even if we assume the first prong was met, Harris has failed to demonstrate with a reasonable probability, a different outcome would have resulted but for trial counsel's failure to challenge the voluntariness of the statement. The second prong is not met. Accordingly, Harris's claim of ineffective assistance of counsel for failure to challenge the voluntariness of the confession is without merit.

Second, Harris contends that counsel was ineffective in that he advised Harris to have the jury assess punishment and not the judge. The decision as to who assesses the punishment in any criminal case is usually a matter of trial strategy. *Ex parte Adams,* 701 S.W.2d 257 (Tex. Crim.App.1985). Harris had the burden to prove by a preponderance of the evidence that counsel's representation fell below the standard of prevailing professional norms, and that the outcome of the trial would have been different had counsel not fallen below the standard. But he has not met that burden. Harris has failed to present evidence showing how he was harmed by the fact that he was sentenced by the jury rather than by the judge. The *Strickland* test is not met. Accordingly, Harris's claim of ineffective assistance of counsel for failure to elect to have the judge assess punishment is without merit.

Third, Harris argues that the failure of trial counsel to encourage him to testify during punishment was ineffective assistance of counsel. He contends that "there was nothing to be gained by remaining on the sidelines" because the jury had already found him guilty and he was facing the possibility of life in prison due to his prior offense. But all of Harris's assertions regarding the benefits of this testimony constitute mere speculation and second-guessing of his trial counsel's strategy. Any error in trial strategy will be deemed inadequate representation only if counsel's actions are without any plausible basis. *Ex parte Burns,* 601 S.W.2d 370 (Tex.Crim.App.1980). And, without proof, we can only presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. The first prong of the *Strickland* test is not met. Accordingly, Harris's claim of ineffective assistance of counsel for failing to encourage him to testify is without merit.

In sum, we cannot say that the complained of errors on the part of Harris's trial counsel "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2063. Thus, Harris's fifth issue is overruled.

CONCLUSION

The convictions for manslaughter are vacated. The conviction for intoxication manslaughter by speeding is also vacated. The judgment of conviction for intoxication manslaughter by running a red light with a deadly weapon finding, the conviction for failure to stop and render aid, and the related sentences are affirmed.