IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00222-CR

No. 10-05-00223-CR

 

Charlie Julius Gonzales,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court Nos. 2003-689-C,
2002-274-C

 



DISSENTING Opinion










 

          Less than six months ago, a majority
of this Court refused to let Justice Vance do exactly what he is doing in this
case; identify, raise, brief, and dispose of an issue not raised or briefed by
either party.  See Archie v. State, 181 S.W.3d 428 (Tex. App.—Waco 2005,
pet. granted).  Why Justice Reyna has flipped positions and now joins Justice
Vance in becoming an advocate for a party is left unexplained.  For the reasons
expressed in Archie, I remain opposed to judges becoming advocates for a
party.  And it is not just the identification and decision of the issue that is
the problem.  When only one point of view is identified, briefed, and then argued,
by a member of the Court, it is then difficult for the Court, and particularly
that member, to be entirely objective and impartial in deciding the issue.  The
opportunity for advocates to make legal arguments on behalf of a party is the
cornerstone of our system of jurisprudence.  By an advocate for the other party
in an appeal, compelling arguments can be made against the majority’s procedure
to take up this issue for a party as well as the merits of the majority’s
decision.  But we are improperly deprived of the benefit of other briefing and
argument on the issue.  See Tex.
R. App. P. 38.9.

          I pause here only long enough to note
that in this combined case there is only one judgment signed by the trial
court.  For practical purposes, the two indictments were consolidated.  Copies
of the single judgment were placed in each file; but there is still only one
judgment.  So, I do not know which judgment is being affirmed if one judgment
is being reversed.  For that reason, if no other, I must dissent.  But frankly,
that is not the only problem with the majority opinion.

          First, in a rush to establish the ability
to do what a majority of the Court had rejected in Archie, I believe the
majority has rushed past a meritorious issue raised by the defendant.

          Second, the majority mentions the two
competing tests discussed in Harris used to determine which offense to
vacate as a remedy on appeal.  See Harris v. State, 34 S.W.3d
609, 612-613 (Tex. App.—Waco 2000, pet. ref’d).  In Ex parte Pena, the
Court of Criminal Appeals adopted the "most serious offense" test to
determine which offense to dismiss where there was a misjoinder of more than
one offense in an indictment.  Ex parte Pena, 820 S.W.2d 806, 809 (Tex.
Crim. App. 1991).  The Court of Criminal Appeals, in Landers, adopted
the "most serious punishment" test to determine which offense to
dismiss when there was a double jeopardy violation because the defendant was
convicted of both a greater and lesser included offense.  Landers v. State,
957 S.W.2d 558, 559-60 (Tex. Crim. App. 1997).  But in Harris, neither
test was determinative.  So this Court used the test described in Holcomb
to determine which offense should be vacated.  Holcomb v. State, 745
S.W.2d 903, 908 (Tex. Crim. App. 1988); Harris, 34 S.W.3d at 614.  That
test is that we uphold the conviction listed first in the trial court's
judgment.  Id.  But instead of using one of these tests, the majority
sort of merges the Landers test and the Holcomb test to make up its
own test, concluding that the conviction with the most serious punishment that
was alleged first in the indictment is the conviction to be upheld.  Maj. Op.
at 22.  There is no need to create a new test.

          And third, there is a critical
distinction between the Harris line of cases and this case.  In Harris,
we were concerned with double jeopardy, not unanimity of a jury verdict.  In Harris,
the jury had answered four separate questions in the charge finding the
defendant guilty on all four.  If this charge had been properly submitted as
four separate questions and the jury answered guilty on all four, then we might
have a double jeopardy issue if the four acts were not sufficiently distinct so
that the conduct required to support each finding was different.  But only when
you have separate unanimous jury verdicts do you even start trying to decide
which convictions will be disregarded to avoid violating the constitutional
prohibition of double jeopardy and which conviction(s) will be affirmed.

          The fact that the majority can go
through the offenses and find one with a more serious penalty and, thus, decide
on which count to base a finding of guilt, is significant.  It lets the
majority sit, not as a thirteenth juror, but as the jury’s Dali Lama, telling
us the answer to the question:  What is the meaning of the jury’s verdict?  

          The resolution of the issue
identified, briefed, and argued by the majority is the most powerful argument
that Gonzales has suffered some injury from the error in the charge which
deprived Gonzales of a unanimous jury verdict on each specific count and
deprived Gonzales of the ability to know which of the charges the jury unanimously
agreed upon, if any.  Because one victim can be subjected to multiple assaults,
Gonzales may have committed four assaults in this case.  Or, it could be that
the only assault in the charge the jury could agree upon was causing serious
bodily injury (which does not require a deadly weapon) and rejected the other
three assaults (which involved a deadly weapon).  Or it could be they did not
all agree that Gonzales committed any of the four assaults.  We know that the
jury that considered the two aggravated assault counts in the first trial,
which resulted in a hung jury, could not reach an agreement on either of those
counts charged in the disjunctive—including the count the majority now decides
to affirm.  But now we know which one this jury unanimously agreed upon because
the majority tells us.  That is the jury’s decision, not this Court’s.

          I dissent.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed April 12, 2006

(To
be published with the majority opinion issued April 5, 2006)






="text-align: justify; line-height: 0.388889in">      Point two asserts the trial court erred in refusing to allow testimony that Pete Espinosa, who
was seen with the victim prior to death and who supplied the victim with controlled substances for
resale, was found in possession of controlled substances, large amounts of money, and a pistol on
the day after the victim's death, and such refusal denied [defendant] a fair trial.
      At trial there was testimony that the victim was in possession of 50 pounds of marihuana and
$10,000 prior to his death. Defendant, in an attempt to show that someone other than defendant
committed the murder of Lopez, sought to introduce evidence that Pete Espinosa had supplied
Lopez with a large amount of marihuana the day before the murder; that Espinosa was stopped by
the police the day after the murder and the search of his vehicle revealed two pounds of
marihuana, a gun and $1,150 in money. Defendant contends the above shows another person's
motive and ability to commit the offense. The trial court sustained the State's objection to the
evidence.
      Before evidence of the guilt of another party to the charged offense is admissible, three
requirements must be met:
●The state is relying on circumstantial evidence for conviction;
●The guilt of such party is inconsistent with the guilt of the accused on trial;
●The facts show that such party was so situated that he might have committed the
crime.
      The State here was not relying on circumstantial evidence to convict defendant. Witness Tom
Enriquez testified that defendant told him that he [defendant] was the one that killed Emelio
Lopez. Enriquez later testified again that defendant said, "I told you I killed him. I don't want
you to tell nobody nothing. You tell your boy the same thing, or I swear . . . ."
      Direct testimony from any source that the defendant was the person who caused the death of
Lopez results in this case being one that is based on direct evidence and not circumstantial
evidence. Barefoot v. State, (Tex. Crim. App.) 596 S.W.2d 875, 880; Moore v. State, (Tex.
Crim. App.) 700 S.W.2d 193, 198. The trial court did not err in refusing to admit the evidence
complained of by defendant. Point two is overruled.
      Point three asserts the trial court erred in refusing to grant a mistrial after determining that
the State violated Rule 613, Texas Rules of Criminal Evidence, and Article 36.06 of the Texas
Code of Criminal Procedure.
      The above rules provide that witnesses, under "the rule," are not to converse with each other
or with any person concerning the case except by permission of the court. "The rule" was invoked
by the State and all witnesses were so instructed. Detective Sanders was called as a witness by
both the State and the defendant. Vinnie Laredo was called as a witness by the defendant. 
Detective Sanders had testified. He was an investigator for the State. The State's attorney, on the
evening after Sanders had testified, asked him to locate a person named "Vinnie" who was a
potential defense witness and find out what he remembered. Detective Sanders did find "Vinnie
Laredo" and asked him to recall his knowledge of certain events occurring the day before and the
day of the murder, which he did. There is no showing that defendant was injured thereby. There
is no question that "the rule" was violated. Defendant moved for a mistrial which was denied by
the trial court.
      While "the rule" should be complied with, not every violation is reversible error. Beets v.
State, (Tex.Crim. App.) 767 S.W.2d 711, 746; Hougham v. State, (Tex. Crim. App.) 659 S.W.2d
410, 413. Enforcement of the rule is within the sound discretion of the trial court and will not be
disturbed absent a showing of abuse of that discretion or injury to the defendant. Green v. State,
(Tex. Crim. App.) 682 S.W.2d 271, 294; Hartsook v. State, (Tex. Crim. App.) 244 S.W.2d 830,
831.
      Defendant called Vinnie Laredo to the stand. There is no showing his testimony was affected
in any way by his conversation with Detective Sanders. Sanders only discussed with Laredo the
date of an automobile collision and a funeral that occurred close to the time of the murder. The
trial court did not err in refusing to grant a mistrial. Point three is overruled.
      Point four asserts the trial court erred in placing first the form verdict of guilty in the first
main charge of the court and that such constituted a comment on the weight of the evidence and
violated the [defendant's] right to the presumption of innocence. 
      Point six asserts the trial court erred in placing first the form verdict of finding the allegations
of prior convictions true in the second main charge of the court and that such constituted a
comment on the weight of the evidence and violated [defendant's] right to presumption of
innocence.
      Defendant cites no authority and no where in the record can harm to defendant be found by
virtue of the order of verdict forms in the court's charge. Points four and six are without merit
and are overruled.
      Point five contends that the comments by the prosecutor during argument in the guilt-innocence phase alluding to the failure of the defendant to testify were manifestly improper, could
not be cured by an instruction to disregard, and denied [defendant] a fair trial, due process of law,
and denied [defendant] his right against self incrimination, all in violation of the United States and
Texas Constitutions.
      During the final argument in the guilt-innocence phase, the State argued: "We don't have a
gun. The only person who would know where the gun would be, the defendant, I'm sure had an
opportunity to put the gun somewhere."
[DEFENSE COUNSEL]: I'm going to object at this time. That's an improper
comment on the defendant's failure to testify.
THE COURT: Overruled.
THE STATE: The defendant would certainly have an ability to dispose of the gun
to where we're never going to find it. You don't expect him to come running in and say,
`Here's my gun.'
[DEFENSE COUNSEL]: I'm going to object again. That's a comment on . . .
THE COURT: Sustain the objection. I instruct the jury they will disregard the last
statement of counsel for the State for any purpose.
[DEFENSE COUNSEL]: We move for a mistrial.
THE COURT: Overruled.
THE STATE: Folks, I just want you to think of the evidence you heard. Use your
common sense. A person who uses a gun is going to hide it in a crime.
[DEFENSE COUNSEL]: I'm going to object again. He's going back into the same
area again.
THE COURT: Overruled.
      Earlier in the argument, counsel for defendant questioned: "Did you hear anybody testify
about any results of any tests on bullets?" Answer: "No." Question: "Did you hear any testimony
about what caliber they were?" Answer: "No." Question: "Did you hear any testimony about any
rifle, what type of gun they could have been fired from?" Answer: "No." Question: "Did you
hear any testimony showing [defendant] has ever in his home, on his person, ever possessed a
gun? And you better believe it, if they had it, they would have brought it to you folks."
      The argument complained of by defendant was in response to the earlier quoted argument of
the defendant's counsel. 
      A prosecutor may answer jury argument of opposing counsel. Andujo v. State, (Tex. Crim.
App.) 755 S.W.2d 138, 144; Johnson v. State, (Tex. Crim. App.) 611 S.W.2d 649, 650. The
State's response to an invited argument may even be a comment on defendant's failure to testify. 
Nethery v. State, (Tex. Crim. App.) 692 S.W.2d 686, 702. Assuming, without deciding, that the
complained of argument was error, we hold beyond a reasonable doubt that such did not contribute
to the verdict. Tex. R. App. P., 81(b)(2); Orona v. State, (Tex. Crim. App.) 791 S.W.2d 125. 
Point five is overruled.
      The judgment is affirmed.
 
 
                                                                                     FRANK G. McDONALD
                                                                                     Chief Justice (Retired)

Before Chief Justice Thomas,
      Justice Vance, and
      Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed June 16, 1993
Do not publish