IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00222-CR

No. 10-05-00223-CR

 

Charlie Julius Gonzales,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court Nos. 2003-689-C,
2002-274-C

 



DISSENTING Opinion










 

          Less than six months ago, a majority
of this Court refused to let Justice Vance do exactly what he is doing in this
case; identify, raise, brief, and dispose of an issue not raised or briefed by
either party.  See Archie v. State, 181 S.W.3d 428 (Tex. App.—Waco 2005,
pet. granted).  Why Justice Reyna has flipped positions and now joins Justice
Vance in becoming an advocate for a party is left unexplained.  For the reasons
expressed in Archie, I remain opposed to judges becoming advocates for a
party.  And it is not just the identification and decision of the issue that is
the problem.  When only one point of view is identified, briefed, and then argued,
by a member of the Court, it is then difficult for the Court, and particularly
that member, to be entirely objective and impartial in deciding the issue.  The
opportunity for advocates to make legal arguments on behalf of a party is the
cornerstone of our system of jurisprudence.  By an advocate for the other party
in an appeal, compelling arguments can be made against the majority’s procedure
to take up this issue for a party as well as the merits of the majority’s
decision.  But we are improperly deprived of the benefit of other briefing and
argument on the issue.  See Tex.
R. App. P. 38.9.

          I pause here only long enough to note
that in this combined case there is only one judgment signed by the trial
court.  For practical purposes, the two indictments were consolidated.  Copies
of the single judgment were placed in each file; but there is still only one
judgment.  So, I do not know which judgment is being affirmed if one judgment
is being reversed.  For that reason, if no other, I must dissent.  But frankly,
that is not the only problem with the majority opinion.

          First, in a rush to establish the ability
to do what a majority of the Court had rejected in Archie, I believe the
majority has rushed past a meritorious issue raised by the defendant.

          Second, the majority mentions the two
competing tests discussed in Harris used to determine which offense to
vacate as a remedy on appeal.  See Harris v. State, 34 S.W.3d
609, 612-613 (Tex. App.—Waco 2000, pet. ref’d).  In Ex parte Pena, the
Court of Criminal Appeals adopted the "most serious offense" test to
determine which offense to dismiss where there was a misjoinder of more than
one offense in an indictment.  Ex parte Pena, 820 S.W.2d 806, 809 (Tex.
Crim. App. 1991).  The Court of Criminal Appeals, in Landers, adopted
the "most serious punishment" test to determine which offense to
dismiss when there was a double jeopardy violation because the defendant was
convicted of both a greater and lesser included offense.  Landers v. State,
957 S.W.2d 558, 559-60 (Tex. Crim. App. 1997).  But in Harris, neither
test was determinative.  So this Court used the test described in Holcomb
to determine which offense should be vacated.  Holcomb v. State, 745
S.W.2d 903, 908 (Tex. Crim. App. 1988); Harris, 34 S.W.3d at 614.  That
test is that we uphold the conviction listed first in the trial court's
judgment.  Id.  But instead of using one of these tests, the majority
sort of merges the Landers test and the Holcomb test to make up its
own test, concluding that the conviction with the most serious punishment that
was alleged first in the indictment is the conviction to be upheld.  Maj. Op.
at 22.  There is no need to create a new test.

          And third, there is a critical
distinction between the Harris line of cases and this case.  In Harris,
we were concerned with double jeopardy, not unanimity of a jury verdict.  In Harris,
the jury had answered four separate questions in the charge finding the
defendant guilty on all four.  If this charge had been properly submitted as
four separate questions and the jury answered guilty on all four, then we might
have a double jeopardy issue if the four acts were not sufficiently distinct so
that the conduct required to support each finding was different.  But only when
you have separate unanimous jury verdicts do you even start trying to decide
which convictions will be disregarded to avoid violating the constitutional
prohibition of double jeopardy and which conviction(s) will be affirmed.

          The fact that the majority can go
through the offenses and find one with a more serious penalty and, thus, decide
on which count to base a finding of guilt, is significant.  It lets the
majority sit, not as a thirteenth juror, but as the jury’s Dali Lama, telling
us the answer to the question:  What is the meaning of the jury’s verdict?  

          The resolution of the issue
identified, briefed, and argued by the majority is the most powerful argument
that Gonzales has suffered some injury from the error in the charge which
deprived Gonzales of a unanimous jury verdict on each specific count and
deprived Gonzales of the ability to know which of the charges the jury unanimously
agreed upon, if any.  Because one victim can be subjected to multiple assaults,
Gonzales may have committed four assaults in this case.  Or, it could be that
the only assault in the charge the jury could agree upon was causing serious
bodily injury (which does not require a deadly weapon) and rejected the other
three assaults (which involved a deadly weapon).  Or it could be they did not
all agree that Gonzales committed any of the four assaults.  We know that the
jury that considered the two aggravated assault counts in the first trial,
which resulted in a hung jury, could not reach an agreement on either of those
counts charged in the disjunctive—including the count the majority now decides
to affirm.  But now we know which one this jury unanimously agreed upon because
the majority tells us.  That is the jury’s decision, not this Court’s.

          I dissent.

 

                                                          TOM
GRAY

                                                          Chief
Justice

 

Dissenting
opinion delivered and filed April 12, 2006

(To
be published with the majority opinion issued April 5, 2006)