AFFIRMED and Opinion Filed July 19, 2019



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01123-CR

**RICARDO CASTRO, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 6**
**Dallas County, Texas**
**Trial Court Cause No. F-1725345-X**

## MEMORANDUM OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Bridges

A jury convicted appellant Ricardo Castro of aggravated robbery and sentenced him to forty years' confinement with a $10,000 fine. He raises four issues on appeal. He argues the trial court (1) denied him a challenge for cause during voir dire, (2) allowed improper argument during the punishment phase, and (3) submitted a defective punishment form. He further alleges he received ineffective assistance of counsel. We affirm.

### Background

On August 29, 2017, complainant was working as a cashier at a store in Garland, Texas. Appellant entered the store wearing a red hoodie and waving a gun. At one point, appellant fired the gun towards the wall behind complainant. Appellant then demanded money, and complainant immediately complied. Despite complainant giving all the money from the register, appellant

pointed the gun at him again and demanded more. Appellant eventually left the scene in his car, and complainant and another person inside the store called 911. Officers arrived and took witness statements and gathered evidence.

On September 18, 2017, an officer responded to a call in which appellant said he wanted to turn himself in for a robbery. When officers arrived, appellant was standing outside leaning against his car. Officers asked him to approach, and he came forward with his hands on his head. He did not have a weapon on him, but the call sheet indicated a gun could be inside the car's glove box. A gun was later recovered from that location. Appellant was charged with aggravated robbery. The jury found him guilty.

During the punishment hearing, the jury heard from five witnesses who testified to robberies appellant committed from August 19, 2017 through September 17, 2017. Appellant used a gun during the commission of most of the robberies, but during one, he held a knife to the victim's throat.

Appellant testified on his own behalf. He came to the United States from Guatemala and worked in construction. In September 2016, he met Jose and Jose offered him a job.[1] Appellant thought the job involved remodeling, but he later learned Jose "was sort of a leader in the cartel." Jose wanted him to take drugs to the border or transport money back and forth. Appellant refused. Because of his refusal to work with the cartel, he claimed Jose ordered gang members to kill him.[2]

The cartel also threatened his family. Appellant explained that gang members accessed family pictures on his cellphone, and he genuinely feared for their safety. To protect his family, appellant agreed to commit robbery. They told him not to wear a mask during the robberies. After committing the robberies, he gave the money to the gang. They later instructed appellant to rob a

---

[1] Appellant also referred to Jose as Miguel.

[2] Appellant alleged Tango Blast, Horn Syndicate, and A.V. Brothers were the gangs working with the cartel. There was no evidence these gangs worked together, and appellant did not specify which gang Jose ordered to kill him.

bank and kill someone. They planned the robbery for September 20, but appellant turned himself in on September 18. He told the officer the Tango Blast gang forced him to commit the robberies, and he wanted protection for his family. He also wanted to talk to DEA agents because he believed the local police officers had connections with the gang and were unlikely to help him.

Despite testifying that he committed the offenses under duress, the jury sentenced him to forty years' confinement and a $10,000 fine.

## Challenge for Cause

In his first issue, appellant argues the trial court erred by denying his challenge for cause to juror number 26, which forced him to use a peremptory challenge to strike him from sitting on the jury. The State responds appellant failed to preserve his issue for review.

During voir dire, defense counsel discussed a defendant's Fifth Amendment right not to testify. He told the potential jury panel, "I need to know whether or not, you know, you would take that into consideration if he chooses not to testify. . . . I need to hear from him. . . . And if I don't hear from him, I'm going to take at [sic] that into consideration when I go back in the jury room." One juror on the front row indicated she felt strongly about hearing from both parties. Jury number 26 nodded in agreement and said, "I - - I think if he doesn't testify, I think I have an issue." The following exchange occurred:

> THE COURT: Well, if the Court tells you that - - not to consider that as any evidence of guilt, are you going to disregard that and consider it as evidence of guilt, his failure to testify?
>
> VENIREMAN: No.
>
> THE COURT: Thank you.
>
> [DEFENSE COUNSEL]: [Jury number 26], you might have - - you know, if the Court tells you not to do that, you're still going - - still would have an issue, have a problem with that, would you not?
>
> VENIREMAN: Yeah.

Defense counsel moved to strike juror number 26, and the trial court denied it. Counsel used a peremptory strike on juror number 26, and requested an additional peremptory strike, but the trial court denied the request.

To preserve error for a trial court's erroneous denial of a challenge for cause, appellant must show that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010); *Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996). The State argues appellant failed to meet the fifth required prong to preserve his issue for review. We agree.

Although appellant asserted a clear and specific challenge for cause that the trial court should have granted, appellant concedes in his brief "trial counsel failed to identify any particular person who sat on the jury." Likewise, the record does not identify any particular objectionable person who sat on the jury. Identifying an objectionable juror who sat on the jury is an essential step of preserving challenges for cause. *See Allen v. State*, 108 S.W.3d 281, 282–83 (Tex. Crim. App. 2003) (appellant waived issue by failing to identify objectionable juror to the trial court); *see also Jackson v. State*, No. 05-06-01526-CV, 2008 WL 2583663, at *2 (Tex. App.—Dallas July 1, 2008, pet. struck) (not designated for publication). Because appellant failed to satisfy the fifth prong, he failed to meet all the requirements to preserve his complaint for review. We overrule appellant's first issue.

### Ineffective Assistance of Counsel

In his second issue, appellant argues he received ineffective assistance of counsel because counsel encouraged him not to testify about a plausible affirmative defense based on counsel's

incorrect assumption that the State would use his testimony against him. The State responds appellant failed to satisfy either *Strickland v. Washington* prong.

The standard of review for evaluating claims of ineffective assistance of counsel is set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* two-step analysis, a defendant must demonstrate that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687–88, 694; *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). An appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *See Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

Appellate review of counsel's representation is highly deferential, and we must "indulge in a strong presumption that counsel's conduct was not deficient." *Nava*, 415 S.W.3d at 307–08; *see Strickland*, 466 U.S. at 689. To overcome this presumption, claims of ineffective assistance of counsel must be firmly founded in the record and affirmatively demonstrate the alleged ineffectiveness. *See Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). However, a reviewing court will rarely be in a position to fairly evaluate the merits of an ineffective assistance claim on direct appeal because the trial record is usually undeveloped and inadequate to reflect the motives behind trial counsel's actions. *Id.* In fact, trial counsel should have the opportunity to explain his actions before being condemned as ineffective. *See Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Therefore, when the record is silent as to trial counsel's strategy, we assume that counsel had a sound strategy, unless the challenged conduct was "so outrageous that

–5–

no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *see also Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011).

During a pretrial hearing, appellant indicated his family was in danger, and he needed to talk to the FBI or DEA to report corrupt police officers. The trial court told him, "That's stuff for you to talk to your lawyer about." Appellant later told the trial court he had information proving he was forced to commit the crimes but no one investigated it. Defense counsel, however, told the court he had an investigator who received the information, but defendant "isn't really satisfied with the investigator's handling of that information." Defense counsel said he would follow up with the investigator. The trial court agreed to have a second investigator look into appellant's allegations.

Defense counsel shared the following concerns:

> I have advised my client that I do not expect that we would be able to produce a witness from a criminal street gang that would come to court and that would admit to coercing you into committing these offenses. The system just doesn't work that way. If we did subpoena someone from a gang, in all likelihood you would appoint that person an attorney who would advise the person of his right to be silent and he would probably take the attorney's advice, rather than coming in here and admitting to some participation in this.

The court agreed and told appellant, "And that is absolutely true what your attorney just said." Defense counsel further explained duress is a defense appellant could raise; however, the trial court emphasized that even if the investigator found people, "[H]e may not find any people who are willing to talk to him, much less admit to their role in something like this." The court acknowledged it is "a very hard type of witness to find . . . The likelihood of having a gang member coming to court to say you were coerced into doing something with him or for him is most likely not going to happen." And, "that's what your attorney is saying."

The case proceeded to trial. Before the defense rested, appellant took the stand and defense counsel questioned him about testifying. Counsel explained duress was a defense, but he again

emphasized he did not expect any member of a criminal street gang to testify in support of appellant's duress defense. Counsel further stated, "I told you that if you choose to testify in that manner there are other robbery offenses which the State can bring up in rebuttal as to whether you were acting under duress or not." Counsel told him if he did not testify, the State may bring up evidence of other cases in punishment if the jury found him guilty, but he could testify during punishment. "Based on what we discussed it's your decision alone whether you want to testify." Appellant chose not to testify during the guilt-innocence phase, but testified during punishment. He testified he "would like to get probation for me to go and see if my girls are okay in my country and I would like to be deported."

Appellant contends counsel's advice caused him to forfeit a meaningful opportunity to present the sole defense available to him, and such advice cannot constitute a valid trial strategy. Although the record includes the discussion appellant and his counsel had before the close of evidence, nowhere in the conversation did counsel advise appellant not to testify. The record refers to a conference between counsel and appellant, but the conference is not contained in the record. The record before us does not support appellant's claim that defense counsel gave any explicit recommendation against him testifying thereby causing him to forfeit a meaningful opportunity to present a defense. Therefore, when the record is silent as to trial counsel's strategy, we assume that counsel had a sound strategy, unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392; *see also Lopez*, 343 S.W.3d at 143. Counsel's conduct was not so outrageous. Rather, the record indicates counsel's advice was potentially part of a trial strategy to prevent the State from introducing evidence of extraneous robberies. Thus, without proof, we can only presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689; *see also Harris v. State*, 34 S.W.3d 609, 619 (Tex. App.—

Waco 2000, pet. ref'd) (failure of counsel to encourage defendant to testify was not ineffective assistance when "assertions regarding the benefits of this testimony constitute mere speculation and second-guessing of his trial counsel's strategy").

Appellant failed to satisfy the first *Strickland* prong. Accordingly, his claim for ineffective assistance of counsel fails. His second issue is overruled.

**Punishment**

In his third issue, appellant argues the punishment form did not allow the jury to consider his eligibility for community supervision. The State responds the charge on punishment and accompanying verdict form provided the necessary information to the jury. Alternatively, the State argues error, if any, was harmless.

In analyzing alleged jury charge error, we first decide whether error exists. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015). If error exists, we then determine whether the error caused sufficient harm to warrant reversal. *Id*. Where, as here, appellant did not raise a timely objection, reversal is required only if the error was fundamental in the sense that it was so egregious and created such harm that the defendant was deprived a fair and impartial trial. *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015).

The purpose of the court's charge is to instruct the jury on all of the law applicable to the case. *Cortez*, 469 S.W.3d at 598. In certain circumstances, a jury may recommend to the court that a defendant's sentence be suspended and that he be placed on community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42A.055.

The abstract portion of the court's punishment charge stated, in relevant part:

> The punishment authorized for the offense of Aggravated Robbery is confinement in the Institutional Division of the Texas Department of Criminal Justice for Life, or for a term not more than 99 years nor less than five years. In addition, you may impose a fine not to exceed $10,000.

A sentence that is assessed must be either served or probated; and the jury may not provide that a portion of the sentence be served and the balance probated. You are instructed that the Court will determine the terms of community supervision and may, at any time during the period of community supervision, alter or modify those conditions.

A defendant is eligible for the jury to recommend community supervision only if, before the trial begins, the defendant files a written sworn motion with the judge that the defendant has not previously been convicted of a felony in this or any other state, and the jury enters in the verdict a finding that the information in the defendant's motion is true. If the jury recommends community supervision for the defendant, the Court must follow the recommendation.

In this case, the defendant has filed, before trial, his sworn motion in which he requests that in the event he is convicted, that he be granted community supervision if the punishment assessed by you is not more than 10 years confinement . . . .

The verdict form included two paragraphs from which the jury chose punishment: one allowed the jury to find appellant guilty of aggravated robbery and provided a blank to fill in the length of imprisonment and a blank to include a fine; the second allowed the jury to find appellant guilty of aggravated robbery and provided a blank to fill in the length of imprisonment and a blank to include a fine "and further recommend[ed] to the Court that the sentence should be probated."

Although the verdict form did not include a blank for the jury to explicitly find that appellant had not previously been convicted of a felony in this or any other state, the omission was not error. As noted above, the charge included instructions that appellant was eligible for parole if he filed a sworn motion with the trial court indicating he had not been previously convicted of a felony in this or any other state and, "In this case, the defendant has filed, before the court, his sworn motion . . . ." Thus, when examining the charge as a whole, as we must, the jury was properly instructed on the availability of community supervision. *See Dinkins v. State*, 894 S.W.2d 330, 340 (Tex. Crim. App. 1995) (review of charge error requires examination of charge as a whole instead of series of isolated and unrelated statements).

–9–

Even if the charge was erroneous, appellant cannot establish egregious harm. The court's charge as a whole correctly stated the law applicable to the case. *See Villarreal*, 453 S.W.3d at 433 (in determining harm, we consider the entirety of the charge). Whether appellant was eligible for community supervision was not a contested issue; therefore, he was unlikely harmed by the omission from the verdict form. *Id.* (state of the evidence, including contested issues, considered in egregious harm analysis). Further, the jury assessed a forty-year sentence indicating they unlikely debated whether he should receive community supervision. Harm, if any, is theoretical rather than actual. Appellant's third issue is overruled.

**Jury Argument**

In his fourth issue, appellant argues the State engaged in improper jury argument during punishment. Specifically, he contends the State encouraged a lengthy prison sentence based on extraneous conduct of him being a criminal in general. The State responds appellant failed to preserve his issue for review. We agree.

The right to a trial untainted by improper jury argument is forfeitable. *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018); *Beaty v. State*, No. 05-17-00287-CV, 2018 WL 3991283, at *11 (Tex. App.—Dallas Aug. 21, 2018, pet. ref'd) (mem. op., not designated for publication). Erroneous jury argument must be preserved by objection pursued to an adverse ruling; otherwise, error is waived. *Hernandez*, 538 S.W.3d at 623. Because appellant did not object to the prosecutor's argument, he presents nothing for review. *See, e.g., Beaty*, 2018 WL 3991283, at *11. We overrule appellant's fourth issue.

**Conclusion**

The judgment of the trial court is affirmed.


/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
181123F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RICARDO CASTRO, Appellant

No. 05-18-01123-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 6, Dallas County, Texas
Trial Court Cause No. F-1725345-X.
Opinion delivered by Justice Bridges.
Justices Brown and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 19, 2019