Julius ARCHIE, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–04–00153–CR.

Court of Appeals of Texas, Waco.

Nov. 2, 2005.

Rehearing Overruled Jan. 3, 2006.

---

John A. Kuchera, Waco, for appellant.

John W. Segrest, McLennan County Dist. Atty., Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

A jury convicted Julius Archie of family violence assault (a felony) and misdemeanor assault. The jury assessed his punishment at ten years in prison for the felony and one year in jail for the misdemeanor. Archie contends in two issues that: (1) he was punished twice for the same offense in violation of the prohibition against double jeopardy; and (2) the court abused its discretion by denying his motion for mistrial during the punishment phase when a prosecutor commented on his failure to testify. We will affirm the convictions, reverse the punishment, and remand for a new punishment hearing.

### Background

The indictment contains three counts charging Archie with: (1) aggravated assault; (2) family violence assault elevated

to a felony by a prior family violence assault; and (3) unlawful restraint. Gina Columbus is the complainant in all three counts, which were all alleged to have occurred on the same date.

Viewed in a light most favorable to the verdict, the evidence reflects that Columbus picked Archie up at the county fair and drove him home. Columbus waited in the car while Archie went inside to change clothes. When Archie returned to the car, he began talking with her about a man she had previously dated. Archie was agitated. He hit Columbus in the head with enough force to cause her head to hit the driver's side window. The impact left her head cut and bleeding.

Archie changed places with Columbus and began driving. Columbus began to feel dizzy. Archie drove to Columbus's house and tried to clean her up. He refused to allow her to leave. He struck her repeatedly, grabbed her by the hair, and tried to choke her with his arm. He also tried to choke her with various objects including a bed sheet and a cable cord. He tied her hands and feet behind her back, rolled her up in some foam, stuffed a teddy bear in her mouth, put a sheet over her head, and left the house. He later returned to argue some more with her.

Archie testified in his own defense. He insisted that the injuries Columbus sustained in the car were accidental. He agreed that they fought in her house but denied the allegations that he had choked her or restrained her in any manner.

The court charged the jury on the lesser-included offense of misdemeanor assault as an alternative to the aggravated assault charge. The jury convicted Archie of the lesser-included assault charge, convicted him of family violence assault as charged, and acquitted him of unlawful restraint.

During punishment, the State called a former girlfriend of Archie's, Bria Alexander, and his current girlfriend, Desiree Briscoe, to testify. Alexander testified that Archie became violent during their relationship, choked her, and pulled her hair on "many" occasions. She also testified that he tied her up once with a telephone cord, put her in a closet, and put a blanket on top of her.

Briscoe testified that Archie is not violent although they have gotten in arguments on occasion. She denied that he has ever choked her, but she did recall one occasion when he held her against the wall.

Archie called a former girlfriend, Brandy Dunlap, who testified that she had dated him for more than five years and he had never been violent toward her. Archie also called his father who testified that he would encourage Archie to participate in anger management counseling if he received community supervision.

The jury assessed Archie's punishment as indicated above.

### Double Jeopardy

■ Archie contends in his first issue that court abused its discretion by failing to require the State to elect which of the two assault counts it would proceed on, which resulted in his being punished twice for the same offense.

■ "An election is required when an indictment alleges the commission of a single offense but the State offers evidence at trial that the accused committed the offense alleged more than once." *Moore v. State*, 143 S.W.3d 305, 312 (Tex.App.-Waco 2004, pet. ref'd) (citing *Scoggan v. State*, 799 S.W.2d 679, 680 n. 3 (Tex.Crim.App. 1990); *Brantley v. State*, 48 S.W.3d 318, 322 n.1 (Tex.App.-Waco 2001, pet. ref'd)).

■ The Double Jeopardy Clause of the Fifth Amendment[1] prohibits the State from punishing a defendant twice for the same crime. *See Sattazahn v. Pa.*, 537 U.S. 101, 106, 123 S.Ct. 732, 736, 154 L.Ed.2d 588 (2003); *Lopez v. State*, 108 S.W.3d 293, 295–96 (Tex.Crim.App.2003). However, this prohibition is not invoked when a defendant is convicted and punished for the repeated commission of the same offense on distinct occasions. *See Campbell v. State*, 149 S.W.3d 149, 155 (Tex.Crim.App.2004); *Patterson v. State*, 96 S.W.3d 427, 432 (Tex.App.-Austin 2002), *aff'd*, 152 S.W.3d 88 (Tex.Crim.App.2004).

Here, the indictment alleges and the evidence shows two separate assaults: (1) the assault in the car; and (2) the assault in the house. Thus, the State was not required to make an election, and Archie was not punished twice for the same offense. *See Patterson*, 96 S.W.3d at 432.

Accordingly, we overrule Archie's first issue.

### Motion For Mistrial

Archie contends in his second issue that the court abused its discretion by overruling his motion for mistrial after a prosecutor commented on his failure to testify in closing argument during the punishment phase.

After the punishment evidence was concluded, the court read the punishment charge to the jury. Among other things, the charge instructed the jury not to consider Archie's failure to testify "for any purpose whatsoever."

The argument at issue follows:

PROSECUTOR: I think you have also learned he has no respect for women. You have heard from three women now. And two of them tell you, frighteningly, the same story; that things are okay in the beginning of a relationship and then things start to go downhill, and that he strangles them and he ties them up. That is his MO. That's what he does. You've heard that now from two people. You heard no evidence to the contrary as to Bria Alexander, the second victim. You heard no denial. That was just accepted.

DEFENSE COUNSEL: Excuse me, Your Honor. I object to counsel's comment on the defendant's failure to testify by that comment, that you have heard no denial about that.

THE COURT: Instruct the jury that they will—I sustain the objection and instruct the jury that they will follow the Court's instructions.

DEFENSE COUNSEL: Move for mistrial based on that.

THE COURT: Overruled.

The State does not seriously challenge Archie's assertion that the statement at issue was an erroneous comment on his failure to testify. Apparently, the trial court did not either as it promptly sustained Archie's objection. Therefore, we limit our inquiry to the issue of whether the court's instruction cured the prejudicial effect of the improper comment and, if not, whether this error harmed Archie.

■ To determine whether the court's instruction cured the prejudicial effect of the improper comment, "[w]e balance three factors: (1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed)." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App.2004).

---

**1.** The Fifth Amendment provides in pertinent part, "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. Amd. V.

Here, the prosecutor directly commented on Archie's failure to testify. *See Goff v. State,* 931 S.W.2d 537, 548 (Tex. Crim.App.1996) (comment is direct when it refers to evidence which can come from only the defendant); *Graff v. State,* 65 S.W.3d 730, 737 (Tex.App.-Waco 2001, pet. ref'd) (same); *Weyandt v. State,* 35 S.W.3d 144, 157 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (same). The prejudicial effect of a direct comment may be more difficult to cure than that arising from an indirect comment. *Montoya v. State,* 744 S.W.2d 15, 37 (Tex.Crim.App.1987); *Roberson v. State,* 100 S.W.3d 36, 42 (Tex. App.-Waco 2002, pet. ref'd); *Barnum v. State,* 7 S.W.3d 782, 795 (Tex.App.-Amarillo 1999, pet. ref'd). However, the prosecutor did not persist in pursuing this improper argument. *See Roberson,* 100 S.W.3d at 42 (considering persistence and flagrancy of prosecutor's conduct).

The court's instruction was very generic and did not direct the jury to disregard the improper argument. In fact, the court's instruction was even less definitive than another which we have found inadequate. *See Veteto v. State,* 8 S.W.3d 805, 811–12 (Tex.App.-Waco 2000, pet. ref'd) ("simplicity of the trial courts instructions ['you'll disregard'] when constitutional guarantees were at stake ... did not effectively cure the prejudice").

True, the court had not long before read to the jury the nineteen paragraphs of instructions contained in the punishment charge, and one paragraph of these instructions plainly prohibited the jury from considering Archie's failure to testify. However, the instructions in the punishment charge were not given in response to the prosecutor's improper argument. A more direct instruction would have been far more effective to cure the prejudicial effect of the improper argument. *Cf. Brown v. State,* 92 S.W.3d 655, 668–69

(Tex.App.-Dallas 2002) (in similar situation, court specifically instructed jurors to disregard prosecutor's improper argument), *aff'd,* 122 S.W.3d 794 (Tex.Crim. App.2003).

With regard to the certainty of the punishment assessed absent the improper comment, we conclude that, due to the strength of the State's punishment case, it is likely that the same punishment would have been assessed regardless of the improper comment. *See Hawkins,* 135 S.W.3d at 85; *Roberson,* 100 S.W.3d at 42–43.

In summary, the prosecutor directly commented on Archie's failure to testify, and the court did not directly or effectively instruct the jury to disregard this improper comment. Because of the directness of the improper comment and the generic nature of the curative instruction, we hold that the instruction did not cure the prejudicial effect of the comment. We now determine whether this error requires reversal.

■ Because the prosecutor commented on Archie's failure to testify, the error is constitutional. *Roberson,* 100 S.W.3d at 43–44. Accordingly, the error requires reversal unless we "determine[ ] beyond a reasonable doubt that the error did not contribute to the ... punishment." *Id.* (quoting Tex.R.App. P. 44.2(a)). To assess harm, we consider:

- the source and nature of the error;
- the extent to which the State emphasized it;
- the probable collateral implications of the error;
- the weight a juror would probably place upon it, giving consideration to whether the record contains "overwhelming evidence supporting the finding in question"; and

• whether declaring the error harmless would encourage the State to repeat it with impunity.

*Roberson,* 100 S.W.3d at 44.

The prosecutor was the source of the improper comment, and her comment ignored one of the basic tenets of the Bill of Rights, the Fifth Amendment's prohibition against using the silence of an accused against him. *See id.* Because the prosecutor made the comment only once, she did not unduly emphasize the error.

The probable collateral implication to be drawn from the comment was that Alexander testified truthfully that her relationship with Archie turned violent over time. *Id.* at 45.

Due to the strength of the State's punishment evidence, we cannot say that the jury placed undue weight on the improper comment. *Cf. id.* (defendant had no prior criminal history and put on evidence that his family would assist him with rehabilitative services he could obtain on community supervision).

Finally, we examine whether declaring the improper denial of Archie's mistrial motion harmless will encourage the State to repeat its improper argument with impunity. We conclude that it will not. The improper comment here appears to have been an inadvertent one which was made under the unique circumstances of this particular trial. *Cf. id.*

In summary, the nature and source of the prosecutor's comment steer us toward a conclusion that the court's erroneous denial of Archie's motion for mistrial was harmful. The collateral implications of the improper argument support this conclusion as well because the jury was faced with conflicting testimony about whether Archie's relationships with women generally ended in violence. This is a critical issue for a jury to consider in determining what punishment Archie should receive for assaulting his girlfriend.

Although this is a close case, we cannot say *beyond a reasonable doubt* that the error did not contribute to Archie's punishment. *See* TEX.R.APP. P. 44.2(a); *Roberson,* 100 S.W.3d at 45. Accordingly, we sustain Archie's second issue.

We affirm the judgment of conviction. We reverse that portion of the judgment assessing punishment and remand this cause to the trial court for further proceedings consistent with this opinion. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2004–2005); *Roberson,* 100 S.W.3d at 45.

Chief Justice GRAY concurring and dissenting.[2]

Justice VANCE concurring and dissenting.[3]

TOM GRAY, Chief Justice, concurring and dissenting.

Julius Archie was convicted of assault and assault—family violence, enhanced. He was sentenced to one year in jail for the assault and to ten years in prison for the enhanced family violence assault. Because the Double Jeopardy Clause is not implicated in this case and because the trial court did not err in overruling Archie's motion for mistrial, I would affirm the trial court's judgment in its entirety.

## DOUBLE JEOPARDY

In stating his first issue, Archie contends the trial court abused its discretion

---

2. Chief Justice Gray concurs in the affirmance of the judgment of conviction but dissents from the reversal of the judgment assessing punishment.

3. Justice Vance dissents from the affirmance of the judgment of conviction but concurs in the reversal of the judgment assessing punishment.

in failing to require the State to elect whether to proceed on count 1 or count 2 once it became clear that the State had presented the same evidence to support both counts, which resulted in, as Archie claims, Archie being punished twice for the same conduct. However, Archie's entire argument is devoted only to the notion that he was punished twice for the same conduct in violation of the Double Jeopardy Clause. This is the argument to be addressed.

Archie argues that because the court and the State agreed that his conduct was the same for both charged offenses, he was punished twice for the same offense. Archie mischaracterizes the conversation between the trial court and the State. And, although Archie cites *Hawkins* for the proposition that the allowable unit of prosecution is the victim, he fails to make any connection between *Hawkins* and his convictions. *See Ex parte Hawkins*, 6 S.W.3d 554 (Tex.Crim.App.1999). Nevertheless, *Hawkins* is distinguishable because it involved one act of theft being charged as two robbery offenses when two victims were involved. That is not the case here.

Archie first assaulted the victim in her car while she was driving. Archie hit her on the right side of her head which caused her to strike the left side of her head on the window of the car. The left side of her head was cut. The next assault began *after* 1) Archie took over driving, 2) they arrived at the victim's house where both she and Archie attempted to clean the cut, and 3) the victim sat on the end of the bed while Archie argued with her. Clearly, two distinct assaults occurred, and the Double Jeopardy Clause is not implicated. *See Blockburger v. United States*, 284 U.S. 299, 301–302, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *Hawkins*, 6 S.W.3d at 557, fn. 8. Archie's first issue is properly overruled,

and I concur in the affirmance of his conviction.

## MOTION FOR MISTRIAL

In his second issue, Archie contends the trial court erred in overruling his motion for mistrial after the State improperly commented on Archie's failure to testify at the punishment phase of the trial. During the punishment phase, the trial court sustained an objection to a portion of the State's argument which Archie characterized as a comment on his failure to testify. An instruction was given to the jury, and Archie's motion for mistrial was overruled.

Although neither Archie nor the State cite this case, last year, the Court of Criminal Appeals set the standard for reviewing the denial of a motion for mistrial following a sustained objection to improper argument at the punishment phase of a trial. *Hawkins v. State*, 135 S.W.3d 72 (Tex. Crim.App.2004). When the trial court sustains an objection and grants a request for an instruction for the jury to disregard but denies the motion for mistrial, the proper issue is whether the refusal to grant the mistrial was an abuse of discretion. *Id.* at 76–77. To determine whether the trial court abused its discretion in denying the mistrial, we balance three factors: 1) the severity of the misconduct, 2) curative measures, and 3) the certainty of the punishment assessed absent the misconduct. *Id.* at 77.

During the punishment phase, the prosecutor argued,

> That's what he does. You've heard that now from two people. You heard no evidence to the contrary as to Bria Alexander, the second victim. You heard no denial. That was just accepted.

The argument could be interpreted as a comment on Archie's failure to testify. However, it could also be interpreted as a statement that there was no denial of

abuse from the witness, a former girlfriend of Archie's, unlike Archie's current girlfriend who denied abuse even though Archie would pull her back if she walked away during an argument and had pinned her up against the wall on previous occasions during arguments. The prosecutor did not make any more comments of this nature. In sustaining Archie's objection, the trial court gave an instruction that the jury would follow the court's instructions. In the charge to the jury, the jury was instructed not to refer to or allude to Archie's decision not to testify and not to take his decision into consideration for any purpose as a circumstance against him. Although Archie was sentenced to the maximum punishment for each offense, the jury heard about Archie's seven prior misdemeanor convictions, which included a violation of a protective order conviction and an assault conviction, and one prior felony conviction. Archie's past history is a more likely reason for the length of the sentences than the statement by the prosecutor.

Thus, the trial court did not abuse its discretion in overruling Archie's motion for mistrial, and his second issue should be overruled.

### RESPONDING TO THE DISSENT OF JUSTICE VANCE

In his dissenting opinion, Justice Vance has opined that he would reverse the conviction for assault-family violence. As he notes in his opinion, the issue on which he would reverse the conviction was not identified by the parties, much less presented or briefed by the parties. We have been told repeatedly that it is improper for us to identify, brief, and decide an issue not raised. *Neal v. State*, 150 S.W.3d 169, 180 (Tex.Crim.App.2004); *Gerron v. State*, 97 S.W.3d 597 (Tex.Crim.App.2003); *Hailey v. State*, 87 S.W.3d 118, 121–122 (Tex. Crim.App.2002). There may be a time,

place, and manner in which this issue can be properly raised and addressed, but the method used by Justice Vance is not it. The parties have not had the opportunity to frame and brief the issue. This violates one of the fundamental tenants of the adversarial form of our judicial system because Justice Vance has shed his judicial robe and has become the advocate for the defendant. Until the issue is properly presented, and to maintain my proper role as a judge, it is necessary that I refrain from deciding the issue raised by Justice Vance.

### CONCLUSION

Having overruled each issue on appeal, I would affirm the trial court's judgment in all respects.

BILL VANCE, Justice, concurring and dissenting.

I agree that the trial court erred in denying Archie's motion for a mistrial and that the trial court's error was harmful. Thus I join in reversing the judgment assessing punishment for felony aggravated assault and remanding that cause to the trial court. However, because the trial court's jury instruction created a new offense, I would also reverse the judgment of conviction of felony family violence assault. Because a majority affirms that judgment, I respectfully dissent.

I acknowledge that Archie did not object to the error in the charge and has not raised the issue on appeal. However, it is well settled that we have the authority to review unpreserved fundamental charge error. *Saldano v. State*, 70 S.W.3d 873, 887 (Tex.Crim.App.2002) (citing article 36.19 of the Code of Criminal Procedure and *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984)); *Olivas v. State*, 153 S.W.3d 108, 114 (Tex.App.-Waco 2004, pet. filed). A jury charge is fundamentally de-

fective when it authorizes conviction for conduct which is not an offense. *Flores v. State*, 48 S.W.3d 397, 402 (Tex.App.-Waco 2001, pet. ref'd) (citing *Jackson v. State*, 591 S.W.2d 820, 824 (Tex.Crim.App.1979)). Review of the fundamental charge error in this case would not violate the rules about procedural default.

"Conduct does not constitute an offense unless ·it is defined as an offense by statute, municipal ordinance, order of a county commissioners court, or rule authorized by and lawfully adopted under a statute." TEX. PEN.CODE ANN. § 1.03(a) (Vernon 2003). Section 22.01 of the Penal Code provides that an assault under that section is a third-degree felony if the offense is committed against a member of the defendant's family or household, if it is shown on the trial of the offense that the defendant has been previously convicted of such an assault against a member of his or her family or household. *Id.* § 22.01(b)(2) (Vernon Supp.2004–05). Section 22.01(e) states that "family" has the meaning assigned by Section 71.003 of the Family Code and that "household" has the meaning assigned by Section 71.005 of the Family Code. *Id.* § 22.01(e) (Vernon Supp. 2004–05).

Section 71.003 of the Family Code states that "family" includes "individuals related by consanguinity or affinity . . ., individuals who are former spouses of each other, individuals who are the parents of the same child, without regard to marriage, and a foster child and foster parent,

without regard to whether those individuals reside together." TEX. FAM.CODE ANN. § 71.003 (Vernon 2002). · Section 71.005 defines "household" as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." *Id.* § 71.005 (Vernon 2002).

The court's charge correctly contained both of the above definitions. However, the court additionally charged: "Member of a household includes a person who previously lived in a household." The trial court thus erroneously incorporated the definition of "member of a household" under section 71.006 of the Family Code into the charge. *See id.* § 71.006 (Vernon 2002).

At least one other court of appeals has said, citing section 71.006, that the State may prove a previous conviction of assault on a member of a household for purposes of 22.01(b)(2) by showing that the defendant and the victim had lived in the same dwelling before the time of the assault. *Goodwin v. State*, 91 S.W.3d 912, 920 (Tex. App.-Fort Worth 2002, no pet.).

I find nothing to indicate a legislative intent to expand the definition of "household" or to incorporate the definition of "members of a household" in section 71.006 of the Family Code into section 22.01 of the Penal Code. If the legislature so intended, it could have either explicitly referenced 71.006 or referred to chapter 71 of the Family Code generally.[1] The stat-

---

1. For example, section 25.07 of the Penal Code, which deals with violations of protective orders, gives "family," "household," and "members of a household" the "meanings assigned by Chapter 71, Family Code." TEX. PEN.CODE ANN. § 25.07(b)(1) (Vernon Supp. 2004–05). In 1999, the legislature amended section 25.07(b) to give those three terms the meanings assigned by "Chapter 71, Family Code" and deleted the statute's reference to

section 71.01. Acts, 76th Leg., R.S., ch. 62, § 15.02, 1999 Tex. Gen. Laws 127, 358. In the same section of the same act, the legislature amended section 42.072(c) of the Penal Code to give those terms the meanings assigned by "Chapter 71, Family Code" and deleted the reference to section 71.01. *Id.* However, again in the same section of the same act, the legislature chose, for the purposes of sections 22.01 and 46.13(f) of the

ute does neither. Section 22.01 of the Penal Code plainly refers to one, and only one, section in the Family Code to define "household" for the purposes of section 22.01. That section is section 71.005. By allowing the trial court to charge the jury using a section of the Family Code not mentioned by the legislature, the court has created a new offense: it is a crime to assault a person with whom the actor formerly lived.[2]

When error in the charge was not the subject of a timely objection to the trial court, reversal will occur only when the error was "fundamental" and "so egregious and created such harm that the defendant 'has not had a fair and impartial trial.'" *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (on rehearing). An error results in egregious harm if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex. Crim.App.1996). The harm is determined by considering the entire charge; the state of the evidence, including contested issues and the weight of the probative evidence; the argument of counsel; and any other relevant information revealed by the record as a whole. *Mann v. State,* 964 S.W.2d 639, 641 (Tex.Crim.App.1998).

Considering the evidence at trial, I do not believe that Archie could have been convicted of family violence assault if the jury had been charged correctly. There is no evidence that Archie and the complain-

ing witness were "family," as defined by section 71.003 of the Family Code. There is no evidence that the two were related by blood or marriage or that they were both parents of the same child.

Under the plain language of sections 22.01 and 71.005, a person is a member of a "household" if the person is a member of "a unit composed of persons *living together in the same dwelling,* without regard to whether they are related to each other." Tex. Fam.Code Ann. § 71.005 (emphasis added). The complaining witness testified that, at the time of the offense, she was living in her mother's house and Archie was living in his father's house. She testified that she had bought another house, that she had furniture in that house, but that she did not yet live in that house. There was no evidence that Archie was living anywhere but his father's house. Thus, there was no evidence that the two were living together in the same dwelling at the time of the offense.

There was, however, evidence that Archie had previously lived with the complaining witness. The complaining witness testified that Archie moved in with her and lived with her for an unspecified period of time before she moved into her mother's house. This is the only evidence of Archie and the complaining witness ever having lived together.

Without the court's erroneous instruction that "member of a household" includes

Penal Code, to define "family" by reference to the definition under 71.003 of the Family Code.

Also in 1999, the legislature amended section 22.01(b)(2) (now section 22.01(b)(3)) to include not only members of the defendant's family but also the defendant's household. Acts, 76th Leg., R.S., ch. 1158, § 1, 1999 Tex. Gen. Laws 4063, 4063. "Family" and "Household" were not given the meanings assigned by Chapter 71 generally, but rather

were given the meanings under the specific sections 71.003 and 71.005, respectively. *Id.* Section 71.006 of the Family Code was then in existence, but the legislature did not assign a definition of "member of a household" or refer to section 71.006. *Id.*

2. Section 71.006 of the Family Code does not contain a time limit or specify when the actor and complainant must have lived together.

persons who previously lived in a household, a rational jury could not have convicted Archie of the offense of family violence assault. Thus, the error "affects the very basis of the case" and is "fundamental" and "egregious." *Hutch,* 922 S.W.2d at 171.

Because the jury charge was fundamental error and Archie was harmed by the error, I would also reverse the judgment of conviction of family violence assault (enhanced) and remand that cause for a new trial.