**Charlie Julius GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 10–05–00222–CR, 10–05–00223–CR.**

Court of Appeals of Texas, Waco.

April 5, 2006.

Rehearing Overruled June 6, 2006.

John A. Kuchera, Waco, for Charlie Julius Gonzales.

John W. Segrest, McLennan County Dist. Atty., Waco, for the State of Texas.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Charlie Gonzales appeals from a conviction for aggravated assault. He was charged in a four-count indictment with two counts of aggravated sexual assault and two counts of aggravated assault alleged to have been committed against the same person on a single date (Trial Court No. 2002–274–C). He pled not guilty, and his first trial ended in a mistrial. Gonzales was then charged in a second indictment with aggravated assault in two paragraphs (Trial Court No. 2003–689–C), alleged to have been committed against the same person and on the same date as the offenses in the first indictment. Although the two causes were not consolidated, they were tried together to a jury by agreement of the parties.[1] The jury was given sepa-

---

1. "A defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode." Tex. Pen.Code Ann. § 3.02(a) (Vernon 2003). But each count (offense) is submitted to the jury in a separate verdict. Tex Code Crim. Proc. Ann.

rate verdict forms on the two aggravated sexual assault counts and returned verdicts of not guilty. The jury was given only one verdict form for the offense of aggravated assault. The application paragraph of the charge authorized conviction on any act alleged in either of the two aggravated assault allegations from the initial indictment or the two allegations from the second indictment. The jury found Gonzales guilty of the offense of aggravated assault and assessed punishment at twenty years' confinement and a $10,000 fine. Based on the single verdict form, a judgment of conviction was entered in each case assessing the jury's punishment.

In an earlier appeal, we sustained one issue and remanded the case to the trial court for a hearing on Gonzales's motion for new trial. *See Gonzales v. State*, 2005 WL 428463 (Tex.App.-Waco Feb.23, 2005, no pet.) (mem. op.) (not designated for publication). The trial court held a hearing and denied the motion, and Gonzales now appeals each case again.

Gonzales brings three issues in each appeal. One issue in each appeal is identical: whether the trial court erred in submitting instructions that allowed the jury to convict Gonzales of aggravated assault without requiring unanimity on the act of assault. In Trial Court No. 2002–274–C (our No. 10–05–00222–CR), Gonzales also challenges the aggravated assault conviction on the ground that the evidence is legally and factually insufficient to show that a knife was used or exhibited as a deadly weapon. In Trial Court No. 2003–689–C (our No. 10–05–00223–CR), Gonzales also challenges the aggravated assault convic-

tion on the ground that the evidence is legally and factually insufficient to show that the complainant suffered serious bodily injury as a result of being struck by Gonzales's hand or elbow. We will affirm.

## Background

The complainant testified that she and Gonzales attended a festival, became intoxicated, and got in an argument. They left the festival and went to the home they shared. Gonzales became increasingly angry with her. He ordered her into the bathroom and told her to disrobe and defecate because he intended to penetrate her anally. While she was seated on the toilet, he forced her to perform oral sex on him as he held a knife to her. At one point he tapped her on the back with the knife and cut her on her shoulder blade. Gonzales then told her to go into the bedroom, where he forced her to allow him to penetrate her anally. During the intercourse, he punched her in the back of the head. He then got on top of her, pinned her arms, and beat her with his elbows and fists. She temporarily lost consciousness, and when she regained consciousness, she was bleeding from the nose. Gonzales told her to shower to clean herself. After lying in the shower for a while, she put on a bathrobe and went to the kitchen, where she saw Gonzales "crying hard" with a knife in his hand. Believing that he was about to "finish [her] off," she grabbed a cordless phone and attempted to dial 9–1–1 as she ran from the house. He chased her, and the two struggled from the door out onto the lawn, where she said he grabbed her by the throat. She went to a neighbor's house, and the neighbor called the police and an ambulance, which took

art. 37.07, § 1(c) (Vernon 2005). While the common law rule is one conviction per indictment, multiple convictions are permissible either based upon one charging instrument or several as long as the offenses meet the Penal Code's "criminal episode" definition and are tried in a single trial. *Watson v. State*, 900 S.W.2d 60, 63 (Tex.Crim.App.1995) (citing *LaPorte v. State*, 840 S.W.2d 412, 413 (Tex. Crim.App.1992)).

the complainant to the hospital. It appeared to the neighbor that the complainant had been assaulted, and the neighbor assumed that Gonzales was the assailant.

When police arrived at the house, no one was there. In a back bedroom, police found a mattress with fresh blood on it. Also found there was a phone with blood on the back of it, but not on the earpiece. On the living room floor near the front door, a cordless phone was found, and when the "redial" button was pushed, 9–1–1 appeared. This phone was working, but the 9–1–1 call had never gone out. A pile of wet women's clothes were found next to the bathtub, along with a shirt with blood spots and an ice-cube on it. A knife was found in the front yard, near the porch.

Gonzales impeached the complainant in several respects. She initially denied resuming a sexual relationship with Gonzales after the assaultive episode but later admitted that it did resume extensively and that she had tried to "get back together" with Gonzales. She admitted that after the assault, she "keyed" Gonzales's vehicle when he would not let her in his house, she was "warned away" from his house by police, and just before the first trial that ended in mistrial, she had left Gonzales numerous phone messages begging Gonzales to let her come back. She also admitted that she had been put on probation for previously making a false report of sexual assault, which she explained was only partially false—Gonzales did not rape her on the date that she reported, but he had raped her about a month before her report.

Gonzales testified in his own defense that after they returned home from the festival, he and the complainant "drank a little bit," "smoked marijuana," "watched TV," and "had sex." Some friends called, and he invited them over. This upset the complainant. They argued, she began pushing and shoving Gonzales, and she threatened to kill herself with a knife. Gonzales said that when one of his friends arrived, she told Gonzales: "If you let him in, then I am going to fuck you up.... I'll make you lose your job. I'll make you lose your kids. You will lose everything, the house and all." He told her that she was pathetic and that if she was going to kill herself, he was not going to stand and watch. Gonzales denied assaulting the complainant in any way and said that the wounds were self-inflicted with the phone. Gonzales testified that he then left with his friend. Later that night, Gonzales had a friend drive him by the house, but they did not stop because there were several police cars there. He stayed with a friend for a few days. Gonzales said that a day or two after the episode, the complainant called him, crying and telling him that she was sorry, stating, "she don't know why she does what she does." A few days later, Gonzales turned himself in to police.

### Jury Charge Error

■ The first indictment alleged in Count 3 that Gonzales committed aggravated assault by cutting the complainant's back with a knife. Count 4 alleged aggravated assault by Gonzales's threatening the complainant with imminent bodily injury with a knife. The second indictment alleged in the first "paragraph"[2] that Gonzales committed aggravated assault by striking the complainant with his hand or

---

**2.** The term "count" is used to charge a separate offense; a paragraph is a portion of a count and charges a method of committing an offense. *Watkins v. State*, 946 S.W.2d 594, 601 (Tex. App–Fort Worth 1997, pet. ref'd);

*see* TEX.CODE CRIM. PROC. ANN. art. 21.24 (Vernon 1989). The substance of the allegation, rather than its label, determines whether it is a count or a paragraph. *Watkins*, 946 S.W.2d at 601.

elbow. The second paragraph alleged aggravated assault by Gonzales's striking or strangling the complainant with this hand, which was used as a deadly weapon.

The application paragraph in the jury charge reads in pertinent part:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 26th day of August, 2001, in McLennan County, Texas, the Defendant, Charlie Julius Gonzales did intentionally, knowingly, or recklessly cause bodily injury to [the complainant] by cutting her in the back, and the defendant did then and there use or exhibit a deadly weapon, to-wit: A knife, during the commission of said assault; *or* did then and there intentionally or knowingly threaten [the complainant] with imminent bodily injury, and did then and there use or exhibit a deadly weapon, to-wit, a knife during the commission of the said assault; *or* did then and there intentionally, knowingly, or recklessly cause serious bodily injury to [the complainant], by striking her with his hand or elbow; *or* did then and there intentionally, knowingly, or recklessly cause bodily injury to [the complainant], by striking, or strangling her with his hand, and the Defendant did then and there use or exhibit a deadly weapon, to-wit: His Hand, during the commission of said assault, then you will find the defendant guilty of aggravated assault as alleged in the indictment. [Emphasis added.]

■ A jury verdict in a criminal case must be unanimous.[3] TEX. CONST. art. V, § 13; TEX.CODE CRIM. PROC. ANN. art. 36.29(a) (Vernon Supp. 2005). A unanimous jury verdict "ensures that the jury agrees on the factual elements underlying an offense," requiring "more than mere agreement on a violation of a statute." *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim.App.2000). However, a trial court may submit a disjunctive jury charge and obtain a general verdict where the alternate theories involve the commission of the "same offense." *Id.* at 124; *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex.Crim.App. 1991). Because of the possibility of a non-unanimous jury verdict, "separate offenses" may not be submitted to the jury in the disjunctive. *Francis*, 36 S.W.3d at 124–25.

■ In his first issue in both appeals, Gonzales asserts that under this charge, he was deprived of his right to a unanimous jury verdict because the jurors were not required to unanimously agree on which act or acts of assault Gonzales committed. *See Ngo v. State*, 175 S.W.3d 738, 745–48 (Tex.Crim.App.2005) (holding that egregious harm occurred when, among other things, prosecutor twice told jury that it could convict even if verdict was not unanimous); *Francis*, 36 S.W.3d at 123–25. The State argues that the charge was correct because Gonzales was charged in the indictments with various manner and means of committing one offense of aggravated assault.[4] Thus, we must determine whether the jury charge in this case merely charged alternate theories of committing the same offense or whether the jury charge included two or more separate offenses charged disjunctively.

The offense of aggravated assault can be committed in at least three separate and distinct ways:

---

3. The jury charge generally instructed the jury that its verdict must be by unanimous vote.

4. The State does not address how the single verdict form and disjunctive submission, "allowing for only one conviction," resulted in two judgments of conviction. (State's Brief at 8).

· Intentionally, knowingly, or recklessly causing serious bodily injury to another. TEX. PEN.CODE ANN. §§ 22.01(a)(1), 22.02(a)(1) (Vernon Supp. 2005).

· Intentionally, knowingly, or recklessly causing bodily injury to another, and using or exhibiting a deadly weapon during the commission of the assault. *Id.* §§ 22.01(a)(1), 22.02(a)(2).

· Intentionally or knowingly threatening another with imminent bodily injury to another, and using or exhibiting a deadly weapon during the commission of the assault. *Id.* §§ 22.01(a)(2), 22.02(a)(2).[5]

■ The commission of "multiple discrete assaults against the same victim" results in liability for separate prosecution and punishment for every instance of such criminal misconduct. *Vernon v. State,* 841 S.W.2d 407, 410 (Tex.Crim.App.1992); *see, e.g., Ex parte Thurmon,* 822 S.W.2d 170, 170–71 (Tex.App.–Houston [1st Dist.] 1991) (defendant who sexually assaulted victim in one county, then drove her to another county and sexually assaulted her *again,* could be prosecuted for both acts, which were "separate and independent offenses"); *Archie v. State,* 181 S.W.3d 428, 430–31 (Tex.App.-Waco 2005, pet. filed) (because indictment alleged and evidence showed two separate, distinct assaults, State was not required to make election and double jeopardy was not invoked);[6] *David v. State,* 808 S.W.2d 239, 240–44 (Tex.App.-Dallas 1991, no pet.) (defendant's two aggravated sexual assault convictions for conduct on same day in allegedly penetrating victim's sexual organ and victim's mouth by his sexual organ were not for same offense) ("A defendant can,

however, rape an individual, kidnap that person, and rape the same victim again on the same day, constituting three separate offenses.").

The Austin Court of Appeals recently addressed a similar factual and procedural situation in which the defendant was indicted for two counts of aggravated assault: the first count alleged bodily injury assault aggravated by the use of a deadly weapon, with three paragraphs alleging different manners and means; and the second count alleged assault by threat aggravated by the use of a deadly weapon, with two paragraphs alleging different manners and means. *See Marinos v. State,* 186 S.W.3d 167, 172 (Tex.App.-Austin 2006, no pet. h.). In a single application paragraph, the trial court authorized the defendant's conviction on any or all of the five paragraphs contained in the two counts, and the jury returned a general verdict convicting the defendant of aggravated assault "as alleged in the indictment." *Id.* On the defendant's complaint that the jury charge and verdict form denied his right to a unanimous verdict, the court concluded that "bodily injury assault and assault by threat are different criminal acts for which a defendant may be convicted only by a unanimous finding of guilt. Therefore, even though the State sought only a single aggravated assault conviction, it was error for the trial court to authorize that conviction without requiring the jury to unanimously agree that appellant committed aggravated bodily injury assault or aggravated assault by threat." *Id.* at 174–75. The court explained:

Similarly, *causing* bodily injury to another and *threatening* another with im-

---

**5.** *These Penal Code provisions are the same* as those in effect at the time of the offenses.

**6.** *Archie* involved a double jeopardy claim premised on the State's alleged failure to elect

which of the two assault counts it would proceed on, but its analysis on how many assaultive offenses occurred is consistent with this opinion.

minent bodily injury are separately defined statutory criminal acts. Tex. Pen. Code Ann. § 22.01(a)(1), (2). Bodily injury assault is a "result of conduct" offense that can be committed intentionally, knowingly, or recklessly. *Fuller v. State*, 819 S.W.2d 254, 255–56 (Tex.App.Austin 1991, pet. ref'd). Assault by threat is a "nature of conduct" offense that can only be committed intentionally or knowingly. *Guzman v. State*, 988 S.W.2d 884, 887 (Tex.App.Corpus Christi 1999, no pet.). *See* Tex. Pen.Code Ann. § 6.03 (West 2005) (defining culpable mental states). *Id.*

We likewise conclude that the two indictments allege four different, separate criminal acts, and the evidence at trial supports our conclusion. Count 3 in the first indictment alleges that Gonzales committed aggravated assault by cutting the complainant's back with a knife. Count 4 alleged aggravated assault by Gonzales's threatening the complainant with imminent bodily injury with a knife. The second indictment alleged in the first paragraph that Gonzales committed serious bodily injury aggravated assault by striking the complainant with his hand or elbow. The second paragraph alleged aggravated assault by Gonzales's striking or strangling the complainant with this hand, which was used as a deadly weapon.

Listing both cause numbers at the top of the page, the trial court incorrectly submitted one general verdict form on the four separately charged acts of aggravated assault, without a unanimity instruction requiring all twelve jurors to find him guilty of the same act. Because the two indictments charged four separate offenses, error occurred in allowing for a non-unanimous verdict. Furthermore, because the jury was given only a single verdict form, we cannot tell whether the jury found him guilty based on one allegation, two allegations, three allegations, or four, even though the single verdict form has resulted in two judgments of conviction.

 Under *Ngo*, the error depriving Gonzales of his right to a unanimous verdict is of constitutional magnitude. *Ngo*, 175 S.W.3d at 752 ("We therefore agree that appellant's constitutional and statutory right to a unanimous jury verdict was violated"); *see Ex parte Smith*, 185 S.W.3d 455, 467 n. 38 (Tex.Crim.App.2006) (stating that jury charge error in *Ngo* was constitutional). However, an unpreserved complaint about a charge error in a criminal case is reviewed for "egregious harm." *Almanza v. State*, 686 S.W.2d 157, 171–72 (Tex.Crim.App.1985) (op. on reh'g). Because trial counsel did not timely object to the charge, Gonzales must show that he suffered egregious harm, a difficult standard that is determined on a case-by-case basis.[7] *Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim.App.2002). Errors that result in egregious harm are those that affect "the very basis of the case," deprive the defendant of a "valuable right," or "vitally affect a defensive theory." *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim. App.1996) (citing *Almanza*, 686 S.W.2d at

---

7. We recognize that some courts would analyze this kind of error for harm under Rule of Appellate Procedure 44.2(a). *See* Tex.R.App. P. 44.2(a); *see, e.g., Warner v. State*, 2005 WL 2313591, at *4 (Tex.App.-Austin Sept. 22, 2005, pet. granted) (mem. op.) (not designated for publication); *Dixon v. State*, 171 S.W.3d 432, 435 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd). But *Ngo* and subsequent similar cases involving unpreserved jury charge error affecting unanimity apply only the "egregious harm" test. See Ngo, 175 S.W.3d at 750–52; *Marinos*, 186 S.W.3d at 175–77; *Martinez v. State*, 190 S.W.3d 254, 259–62, 2006 WL 66659, at *3–6 (Tex.App.-Houston [1st Dist.] Jan. 12, 2006, pet. filed). We will do the same.

172). The harm to Gonzales must be actual, not just theoretical. *Almanza*, 686 S.W.2d at 174. In deciding whether egregious harm exists, we look at (1) the charge itself, (2) the state of the evidence, including contested issues, (3) the arguments of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Hutch*, 922 S.W.2d at 171; *see Ngo*, 175 S.W.3d at 749.

In voir dire, the State commented on the various allegations in the indictments: "All these offenses are alleged to have occurred within the same time period. Really they are just different ways of charging, legal theories of charging the things that allegedly happened that night. So it is all one set of events." The State then summarized the two allegations of aggravated sexual assault and the four allegations of aggravated assault and concluded: "So again we allege that all these things happened in one criminal episode. And it will be up to the jurors after they hear the evidence to determine which, if any, of those things they want to convict the defendant of."

In closing argument, the State commented as follows on the above-quoted aggravated assault application paragraph:

I would like to point out one thing to you. On Page Nine it talks about the offense of aggravated assault. Okay. If you heard—as you heard the Judge read to you earlier, there are several different manner and means that were alleged how that aggravated assault occurred. Okay.

There was he threatened her with bodily injury, exhibited a knife. Or he recklessly caused serious bodily injury by striking her with his hand and elbow. Or he then and there intentionally, knowingly, and recklessly caused bodily injury by striking or strangling her with his hand.

I want to point out, make sure you look where the semi colons are. This is saying or, or, or. You don't have to find all of that true in order to find the defendant guilty of aggravated assault. These are all different manners and means that have been alleged by the State. There is just one aggravated assault here. It was alleged in different ways for it to have occurred. And you must agree that he is guilty of aggravated assault.

Thus, in both voir dire and closing argument, the State referred to the charge error, but the State's comments did not rise to the level of accentuation of the error that occurred in *Ngo*. There the court noted that during voir dire, the State, with respect to three disjunctively joined credit-card-abuse offenses, told jurors "[I]f three of you ... feel like he stole the credit card and used it, six of you think that he received it and three of you think he presented it, it doesn't matter which one you think he did. It can be a mix and match, whichever one you believe." *Ngo*, 175 S.W.3d at 750. Moreover, in *Ngo* the court noted that during the defendant's voir dire, when defense counsel attempted to assert that the State must prove all three criminal acts, the State objected, and the trial court told the jurors: "There's three ways alleged that the offense can be committed.... [T]he State may prove one to the satisfaction of part of the jury, another one to the satisfaction of others, the third one to the satisfaction of another part of the jury." *Id.* Thus, in addition to the trial court's and State's misstatements at the very end of the trial, the court in *Ngo* recognized that both the State and the trial court had also misstated the law at the very beginning of the case. *Id.* The court noted that "the jury was affirmatively told, on three occasions, twice by [the

State] and once by the trial judge, that it need not return a unanimous verdict." *Id.*

Furthermore, unlike *Ngo*, where two of the offenses were mutually exclusive, none of the four acts of aggravated assault in this case were mutually exclusive. Instead, this case is similar to two recent cases finding that erroneous disjunctive charges were not egregious harm. *See Marinos*, 186 S.W.3d 167 (finding no egregious harm from erroneously submitting aggravated bodily injury assault and aggravated assault by threat disjunctively); *Martinez v. State*, 190 S.W.3d 254 (Tex. App.-Houston [1st Dist.], pet. filed) (finding no egregious harm from erroneously submitting sexual contact with complainant's sexual organ and with complainant's anus disjunctively).

Additionally, the state of the evidence, including contested issues, persuades us that the charge error did not deny Gonzales a fair trial. It was not contested that the complainant suffered severe bruising and bleeding about her eyes (including a right eye orbital blow-out fracture), a bleeding nose, scratching and bruising on her throat, and a cut on her shoulder blade that required stitches on the night of the occasion in question. Photographs amply demonstrated these injuries, and the bloody knife that police found in the front yard was in evidence. The contested issue at trial was whether Gonzales inflicted those injuries or whether they were self-inflicted, which was Gonzales's defensive theory. The charge error could not have affected this contested issue. The jury was faced with two mutually exclusive theories: the State's theory that Gonzales inflicted the complainant's injuries, or the

defense theory that those injuries were self-inflicted. An individual juror would either have found that Gonzales committed the aggravated assaults or that he had not assaulted the complainant at all. *See Marinos*, 186 S.W.3d at 176–77; *Martinez*, 190 S.W.3d at 261, 2006 WL 66659, at *5. In finding Gonzales guilty of aggravated assault, the jury plainly accepted the State's theory.[8]

The charge error did not deny Gonzales a fair trial, go to the very basis of the case, or affect Gonzales's defensive theory. We conclude, therefore, that Gonzales did not suffer egregious harm as a result of the charge error. Issue one in each appeal is overruled.

### Sufficiency of the Evidence

In each appeal, Gonzales challenges the sufficiency of the evidence. In No. 10–00222–CR, he asserts that the evidence is legally and factually insufficient to sustain the aggravated assault conviction because there is no or insufficient evidence to show that a knife was used or exhibited as a deadly weapon. In No. 10–00223–CR, Gonzales asserts that the evidence is legally and factually insufficient to sustain the aggravated assault conviction because there is no or insufficient evidence to show that the complainant suffered serious bodily injury as a result of being struck by Gonzales's hand or elbow.

When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the

---

**8.** Also, the error benefited Gonzales because he was subject to conviction for four offenses, and the State's failure to make an election benefits Gonzales by protecting him against future prosecution. *See Rodriguez v. State*,

104 S.W.3d 87, 92 (Tex.Crim.App.2003); *Ex parte Goodbread*, 967 S.W.2d 859, 860–61 (Tex.Crim.App.1998). In a motion for new trial, Gonzales recognized that the indictments allege four offenses.

offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The standard is the same for both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim.App.1999).

We do not resolve any conflict of fact or assign credibility to the witnesses, as this was the function of the trier of fact. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex.Crim.App.1999); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim.App.1991). Instead, our duty is to determine if the findings of the trier of fact are rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000); *Matson*, 819 S.W.2d at 843.

In a factual sufficiency review, we view all of the evidence in a neutral light and consider only whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex.Crim.App.2004). However, there are two ways in which the evidence may be insufficient. *Id.* First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. *Id.* Second, there may be both evidence supporting the verdict and evidence contrary to the verdict. *Id.* Weighing all the evidence under this balancing scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so the guilty verdict should not stand. *Id.* at 485. This standard acknowledges that evidence of guilt can preponderate in favor of conviction but still be insufficient to prove the elements of the crime beyond a reasonable doubt. *Id.* Stated another way, evidence supporting guilt can outweigh the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. *Id.*

*Zuniga* also reminds us that we must defer to the jury's determination. *See id.* at 481 (citing *Cain v. State*, 958 S.W.2d 404, 407 (Tex.Crim.App.1997)). The jury determines the credibility of the witnesses and may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). It is the jury that accepts or rejects reasonably equal competing theories of a case. *Goodman v. State*, 66 S.W.3d 283, 285 (Tex.Crim.App.2001). The evidence is not factually insufficient merely because the factfinder resolved conflicting views of evidence in favor of the State. *Cain*, 958 S.W.2d at 410.

### Knife as a Deadly Weapon

The knife at issue was a kitchen knife that a police officer and a physician said was capable of causing death or serious bodily injury. The record contains a photograph of the knife. The complainant testified that Gonzales forced her to sit on the toilet and perform oral sex on him while he held the knife to her throat and also poked her in the chest with it. Gonzales cut her on the shoulder blade with the knife while he was "slapping" her with it. This evidence is legally and factually sufficient to support a finding that the knife was used or exhibited as a deadly weapon during the aggravated assault. We overrule issues two and three in No. 10–00222–CR.

### Serious Bodily Injury

"Serious bodily injury" means bodily injury that creates a substantial risk

of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. TEX. PEN.CODE ANN. § 1.07(46) (Vernon Supp.2005). In determining whether the evidence supports a finding of serious bodily injury, the relevant issue is the quality of the injury as it was inflicted, not the quality of the injury after its effects are ameliorated with medical treatment. *See Brown v. State,* 605 S.W.2d 572, 575 (Tex.Crim.App.1980); *Boney v. State,* 572 S.W.2d 529, 531–32 (Tex. Crim.App.1978).

The complainant testified that Gonzales hit her in the face multiple times with his hands and elbows and choked her. She said that after Gonzales hit her in the face with his hands and elbows, she lost consciousness briefly. The neighbor whose house the complainant fled to said that she appeared to have a concussion, collapsed on the neighbor's couch, and "kind of passed out." The complainant's treating physician testified that she had lacerations, multiple bruises, a right orbital blow-out fracture, and a closed-head injury (a concussion). He said the orbital fracture is a dangerous injury because it is caused by a "pretty good force" and is places the victim at risk for head injury, brain damage, and potentially death. He also said that the complainant's reported loss of consciousness showed significant injury from either a blow to the head or choking. He

concluded that the injury to the complainant's face and head created a substantial risk of death, that the complainant was seriously injured, and that the complainant's serious bodily injuries could have been caused by hands and elbows. On cross-examination, the physician admitted that *after* he examined the complainant and diagnostic tests had been performed, he did not think she had a serious risk of death. He also was not aware if she had suffered any permanent disfigurement or loss or impairment.

This evidence is legally and factually sufficient to support a finding that the complainant suffered serious bodily injury as a result of being struck by Gonzales's hand or elbow. *See Brown,* 605 S.W.2d at 575 (broken nose was serious bodily injury because it would be disfigured and impaired if not treated); *Dusek v. State,* 978 S.W.2d 129, 133 (Tex.App.-Austin 1998, pet. ref'd) (broken leg was serious bodily injury). We overrule issues two and three in No. 10–00223–CR.

## One Judgment and Conviction, or Two?

▇▇▇ We are left with one issue of unassigned error resulting from the erroneous charge that we have found to be harmless.[9] After the jury returned its punishment decision, the trial court, after remarking to Gonzales that the jury had

**9.** We have authority to entertain unassigned error. *See Sanchez v. State,* 182 S.W.3d 34, 58–64 (Tex.App.-San Antonio 2005, pet. filed) (opinion by Judge John F. Onion, Jr.) (sustaining unassigned error of trial court's erroneous submission of ten separate offenses disjunctively with a general verdict, which created the possibility of a non-unanimous jury verdict) (citing *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990); *Perry v. State,* 703 S.W.2d 668, 670 (Tex.Crim.App. 1986); *Carter v. State,* 656 S.W.2d 468, 468–70 (Tex.Crim.App.1983)). For example, it is well settled that we have the authority to

review unpreserved fundamental charge error. *Saldano v. State,* 70 S.W.3d 873, 887 (Tex.Crim.App.2002) ("The courts of every jurisdiction in this country have some doctrine that permits appellate courts to consider claims that such fundamental rights were violated without objection.... One such class of fundamental errors has been recognized by the legislature. A statute permits our appellate courts to consider claims that an error in the court's charge to the jury, to which no objection was made, was so grave as to deny a defendant a fair trial.") (citing TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1981)).

found him guilty in Cause No. 2002–274–C and in Cause No. 2003–689–C (and stating "those causes having been tried by agreement of the parties together"), sentenced Gonzales: "It is the sentence of the Court that you be confined to the Texas Department of Criminal Justice, Institutional Division for a term of twenty years and fined ten thousand dollars."

■■■ However, two identical judgments of conviction—one in each trial court cause—were entered by the trial court on the one aggravated assault guilty verdict. With two judgments and each reflecting a conviction, are there two convictions? Was Gonzales convicted twice for the same offense? Is he serving two sentences, one for each judgment? This issue and the error are mostly academic in this case because there appears to be no present harm to Gonzales, but we believe that it warrants correction because the State and the trial court considered there to have been the commission of one aggravated assault, the jury charge submitted it as such, and the jury returned one verdict of guilty. There should thus be one conviction and one judgment showing that one conviction, rather than two.[10]

The next questions to answer are which aggravated assault offense was Gonzales convicted of, and which judgment should be vacated as a remedy. We held above that Gonzales was charged with the commission of four aggravated assaults, but the State, the trial court, and the jury charge treated the four offenses as one. And because of the erroneous jury charge, we do not know if the jury found Gonzales guilty of one, two, three, or four aggravated assault offenses. All we know is that he was found guilty of aggravated assault.

Not long ago we addressed a meritorious double jeopardy claim and reviewed the competing "most serious offense" test in *Ex parte Pena* and the "most serious punishment" test in *Landers v. State* to determine the proper remedy. *See Harris v. State*, 34 S.W.3d 609, 612–13 (Tex.App.-Waco 2000, pet. ref'd) (discussing *Ex parte Pena*, 820 S.W.2d 806 (Tex.Crim.App. 1991), and *Landers v. State*, 957 S.W.2d 558 (Tex.Crim.App.1997)); *see also Ochoa v. State*, 982 S.W.2d 904, 908 (Tex.Crim. App.1998) (when jury improperly convicts accused of greater offense and lesser-included offense, proper remedy is to reform judgment by vacating lesser conviction and sentence). But because we have four aggravated assault offenses, three of which include deadly weapon allegations,[11] none of these tests provide an answer. *Ex parte Pena* discusses the various methods that had been used to determine which conviction to uphold, including the offense that was alleged first in the indictment. *Ex parte Pena*, 820 S.W.2d at 808 (citing *Beaupre v. State*, 526 S.W.2d 811 (Tex.

**10.** A judgment is the written declaration of the trial court showing the conviction or acquittal of the defendant. TEX.CODE CRIM. PROC. ANN. art. 42.01, § 1 (Vernon 2005). "However, the written judgment is not itself the conviction; it is only evidence of the conviction. A conviction occurs when the defendant is adjudged guilty by the pronouncement of sentence." 4 BARRY P. HELFT & JOHN M. SCHMOLESKY, TEXAS CRIMINAL PRACTICE GUIDE § 81.01[1][a] (2005); *see Hurley v. State*, 130 S.W.3d 501, 505 (Tex.App.-Dallas 2004, no pet.) (whatever else a conviction may be, it must include an adjudication of guilt); *Ex*

*parte Aviles*, 78 S.W.3d 677, 685 (Tex.App.-Austin 2002, no pet.) (judgment in criminal case merely documents fact of, and certain important events associated with, process leading to conviction or acquittal).

**11.** An affirmative deadly weapon finding affects a convicted person's parole-eligibility date, generally requiring that one-half of the sentence be served for parole eligibility. *See* TEX. GOV'T CODE ANN. § 508.145(d) (Vernon Supp. 2005); TEX.CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(2) (Vernon Supp. 2005).

Crim.App.1975)). Under the circumstances in these appeals, we conclude that the conviction for the offense with the most serious punishment that was alleged first in the indictment is the conviction that should be upheld.

Count 3 of the first indictment in Cause No. 2002–274–C charged Gonzales with bodily injury aggravated assault and the use of a deadly weapon in cutting the complainant with a deadly weapon (knife). Accordingly, we affirm the judgment of conviction for this offense in Cause No. 2002–274–C, and we vacate the judgment of conviction in Cause No. 2003–689–C.

## Conclusion

We overrule all of Gonzales's issues in each appeal. We vacate the trial court's judgment in Cause No. 2003–689–C, but we affirm the trial court's judgment in Cause No. 2002–274–C.

Chief Justice GRAY dissenting.

TOM GRAY, Chief Justice, dissenting.

Less than six months ago, a majority of this Court refused to let Justice Vance do exactly what he is doing in this case; identify, raise, brief, and dispose of an issue not raised or briefed by either party. *See Archie v. State*, 181 S.W.3d 428 (Tex.App.-Waco 2005, pet. granted). Why Justice Reyna has flipped positions and now joins Justice Vance in becoming an advocate for a party is left unexplained. For the reasons expressed in *Archie*, I remain opposed to judges becoming advocates for a party. And it is not just the identification and decision of the issue that is the problem. When only one point of view is identified, briefed, and then argued, by a member of the Court, it is then difficult for the Court, and particularly that member, to be entirely objective and impartial in deciding the issue. The opportunity for advocates to make legal arguments on behalf of a party is the cornerstone of our system of jurisprudence. By an advocate for the other party in an appeal, compelling arguments can be made against the majority's procedure to take up this issue for a party as well as the merits of the majority's decision. But we are improperly deprived of the benefit of other briefing and argument on the issue. *See* Tex.R.App. P. 38.9.

I pause here only long enough to note that in this combined case there is only one judgment signed by the trial court. For practical purposes, the two indictments were consolidated. Copies of the single judgment were placed in each file; but there is still only one judgment. So, I do not know which judgment is being affirmed if one judgment is being reversed. For that reason, if no other, I must dissent. But frankly, that is not the only problem with the majority opinion.

First, in a rush to establish the ability to do what a majority of the Court had rejected in *Archie,* I believe the majority has rushed past a meritorious issue raised by the defendant.

Second, the majority mentions the two competing tests discussed in *Harris* used to determine which offense to vacate as a remedy on appeal. *See Harris v. State*, 34 S.W.3d 609, 612–613 (Tex.App.-Waco 2000, pet. ref'd). In *Ex parte Pena*, the Court of Criminal Appeals adopted the "most serious offense" test to determine which offense to dismiss where there was a misjoinder of more than one offense in an indictment. *Ex parte Pena*, 820 S.W.2d 806, 809 (Tex.Crim.App.1991). The Court of Criminal Appeals, in *Landers*, adopted the "most serious punishment" test to determine which offense to dismiss when there was a double jeopardy violation because the defendant was convicted of both a greater and lesser included offense. *Landers v. State*, 957 S.W.2d 558, 559–60 (Tex.Crim.App.1997). But in *Harris,* nei-

ther test was determinative. So this Court used the test described in *Holcomb* to determine which offense should be vacated. *Holcomb v. State,* 745 S.W.2d 903, 908 (Tex.Crim.App.1988); *Harris,* 34 S.W.3d at 614. That test is that we uphold the conviction listed first in the trial court's judgment. *Id.* But instead of using one of these tests, the majority sort of merges the *Landers* test and the *Holcomb* test to make up its own test, concluding that the conviction with the most serious punishment that was alleged first in the indictment is the conviction to be upheld. Maj. Op. at 754. There is no need to create a new test.

And third, there is a critical distinction between the *Harris* line of cases and this case. In *Harris,* we were concerned with double jeopardy, not unanimity of a jury verdict. In *Harris,* the jury had answered four separate questions in the charge finding the defendant guilty on all four. If this charge had been properly submitted as four separate questions and the jury answered guilty on all four, then we might have a double jeopardy issue if the four acts were not sufficiently distinct so that the conduct required to support each finding was different. But only when you have separate unanimous jury verdicts do you even start trying to decide which convictions will be disregarded to avoid violating the constitutional prohibition of double jeopardy and which conviction(s) will be affirmed.

The fact that the majority can go through the offenses and find one with a more serious penalty and, thus, decide on which count to base a finding of guilt, is significant. It lets the majority sit, not as a thirteenth juror, but as the jury's Dali Lama, telling us the answer to the question: What is the meaning of the jury's verdict?

The resolution of the issue identified, briefed, and argued by the majority is the most powerful argument that Gonzales has suffered some injury from the error in the charge which deprived Gonzales of a unanimous jury verdict on each specific count and deprived Gonzales of the ability to know which of the charges the jury unanimously agreed upon, if any. Because one victim can be subjected to multiple assaults, Gonzales may have committed four assaults in this case. Or, it could be that the only assault in the charge the jury could agree upon was causing serious bodily injury (which does not require a deadly weapon) and rejected the other three assaults (which involved a deadly weapon). Or it could be they did not all agree that Gonzales committed any of the four assaults. We know that the jury that considered the two aggravated assault counts in the first trial, which resulted in a hung jury, could not reach an agreement on either of those counts charged in the disjunctive—including the count the majority now decides to affirm. But now we know which one this jury unanimously agreed upon because the majority tells us. That is the jury's decision, not this Court's.

I dissent.